Ruffin, C. J.
 

 Considering the relation between the parties, it might have required but little evidence, over and above a knowledge by the defendants of the pldns of the principal actor and their observation of-the execution of them, to-satisfy a reasonable mind of-the actual participation of the defendants in the plans, either in their formation or execution. But that is not the question presented here. The evidence being, as might be expected, circumstantial, it was left to the jury to deduce therefrom, as was their province, such inferences as to the facts of the alleged conspiracy, as in their judgment it authorized. The Court was not asked to give any particular instructions in aid of the jury in that part of their duty. It was, therefore, only incumbent on the Court to inform the jury, what kind of conduct by the
 
 *63
 
 defendants would make them conspirators with Edward Bouldin, so as to render them liable for the deceits and impositions practised on the plaintiff by that person. Such directions the Court gave ; and, after considering them, we own that we are unable to perceive that they are erroneous.
 

 As we understand them, it is laid down, that if the defendants aided Edward Bouldin by saying or doing any thing, or in any wise acted in concert with him, to deceive the plaintiff as to the condition and character of that person, or to keep up the delusion of the plaintiff on those points, or to induce, or to enable Edward Bouldin to induce the plaintiff to become his surety — that would amount to a conspiracy and fraud: but that, if the defendants merely knew of the designs and contrivances of the principal party to impose on the plaintiff, that would not be a conspiracy, though they did not, as they might, disclose the matter thus known by them. The question then is, whether a collusion and participation in the scheme or its execution, something beyond silent observation and acquiescence, be not necessary to charge these defendants. We think it is. There are many cases to which is strictly applicable the common saying, that
 
 “
 
 silence gives consent,” and a person is bound, as to his own rights, by not making them known to one innocently dealing for an article.
 
 Qui potest el debet
 
 vetare,
 
 jubet, si non veiat.
 
 Such is the principle, when one ought, as a legal duty, to give notice of his own rights, when one is about to contract with another, who, he knows, is under a false impression as to some material fact, influencing the person to contract. Thus if one man sees another buy hi's estate, and will not make known his title, it is a fraud', which justly renders the contract as binding on the owner, as if he had made it himself. So, for example, if these defendants had themselves taken an obligation from the plaintiff, as the surety of Edward Bouldin, without informing him that he was not the person the plaintiff took him to be and making known his true character ; such silence might be fraudulent, and the plaintiff be relieved from the obliga
 
 *64
 
 tion. Indeed, there the defendants would be parties to the act, from which the injury to the plaintiff arose.
 

 There are, however, many cases in which silence is innocent, at least legally speaking, although another may suffer in consequence of it. A person is always bound to refrain from- wilful falsehood, which may produce a prejudice to another.' He may also be bound to speak the truth concerning any matter or thing, with .which he or his rights are connected, and not suffer another to deal respecting them under a delusion. But in respect to matters, with which he is in no wise concerned or connected, he is not charged with the duty of preventing mischief to others by communicating what he knows, but he may be silent. If one sees another about to fall into a pit, ordinary humanity would induce him to cry out and warn him of the danger. But the duty is of that imperfect kind, of which conscience is the only sanction. It creates no legal obligation; nor its omission any responsibility for consequences. If one recommend an insolvent person as worthy of credit, it is a fraud, which subjects the perpetrator to damages. But if he be asked as to the credit of such a person he may decline answering, although he knows of his insolvency and that the enquirer is about to deal with him. Much more may he refrain from speaking, when he is not asked to do so. The law does not require a person to intermeddle in other people’s business, nor interpose to protect one man from the wrong of another, with neither of whom is he connected, as to the transaction in which the wrong is sustained. One is at liberty to attend to his own affairs, and leave others to enquire as
 
 they
 
 can, and judge for themselves in matters that concern them alone. If these defendants were merely passive witnesses of the deceits of Edward Bouldin, they were his deceits and none of theirs. There must be some union of views, or confederation, between two or more, to constitute a conspiracy. Unless by some deed or word they became parties to the plot to cheat the plaintiff, the defendants could not
 
 *65
 
 have influenced Fhis acts nor contributed to his losses 5 and, therefore, they are not liable to his action.
 

 Per CüRiam, Judgment affirmed.