SHIELDS v. BANK.

(Filed April 18, 1905.)

*Conspiracy to Defraud—Sufficiency of Evidence.*

1. Evidence that plaintiff's brother had failed in business in Tennessee and having moved to this State, plaintiff advanced him money to buy stock in a mercantile corporation and in the defendant bank and took an assignment of the stock in each to secure the advance but that nothing was done by the plaintiff directly to mislead anyone, and that he was not aware the business of his brother was not prospering until after the latter's death, *held*, no proof to support the defendant's allegation, that plaintiff entered into a conspiracy with his brother to cheat or defraud the defendant.

2. To sustain a charge of conspiracy, it must be proved that the party charged entered into a conspiracy to cheat and was a participant in a fraudulent purpose, either in the scheme or its execution, which worked injury as a proximate consequence.

ACTION by Wm. S. Shields against the City National Bank of Greensboro, heard by *Judge Oliver H. Allen* and a jury at the September Term, 1903, of the Superior Court of GUILFORD County. From the judgment rendered both parties appealed.

PLAINTIFF'S APPEAL.

*King & Kimball* and *Parker & Parker* for the plaintiff.
*Brooks & Thompson* for the defendant.

HOKE, J. In this action the plaintiff alleges that he is the owner of ten shares of stock in the defendant bank, standing on its books in the name of M. L. Shields. Said stock is worth $110 per share, and all dividends declared thereon unpaid, and demands judgment that the stock be transferred to his own name, for all dividends declared, for damages and other relief.

The defendant bank admits these facts in its answer except as to the number of dividends declared, and proceeds to set up a counterclaim to the effect that plaintiff, W. S. Shields, and one M. L. Shields, his brother, combined and conspired together to enable M. L. Shields to commit a fraud on defendant bank to its damage several thousand dollars. The scheme alleged between the said plaintiff and M. L. Shields, is set out in sections 1 and 2 of defendant's further defense as follows "That during the year 1897, Milton L. Shields, who was a brother of the plaintiff, moved to the city of Greensboro, N. C., from Knoxville, Tenn., which latter place is still the home of the plaintiff. That the said Milton L. Shields was an extravagant and unsafe business man, had recently failed in business in Tennessee, and at the time of his removing to Greensboro was totally insolvent and without credit and standing as a business man among those who knew him; all of which said facts were well known to his brother Wm. S. Shields, the plaintiff in this action. 2. That the plaintiff well knowing Milton L. Shields' financial condition and untrustworthiness as a business man and desiring to establish him in business in Greensboro and give him financial standing and credit with the defendant bank and others, to which he well knew his said brother was not entitled and ought not to have as defendant is advised and believes, agreed and conspired with the said Milton L. Shields to have him purchase a large block of stock in the Simpson-Shields Shoe Co. of Greensboro with plaintiff's money, and thereby become an officer and director of said concern, and also to purchase ten shares of the defendant's stock and thereby become a director in the defendant bank, so as to obtain a large and undeserved line of credit from the same, and that he (the plaintiff) would furnish all the money necessary to carry out this scheme of fraud and deception, and that all of this stock should be made out and issued in the name of Milton L. Shields and so remain upon the books of the con-

cern issuing the same, but should at once be assigned to their real owner (the plaintiff) and sent out of the State, so that the same could not be held liable for any of the debts contracted by his brother, and that this scheme should be kept a secret from the defendant bank and all others dealing with his brother."

The answer then goes at great length into different business transactions in which the bank extended to Milton L. Shields credit to a large amount, which he failed to pay, and demands judgment against W. S. Shields, the plaintiff, as an individual, for the amount M. L. Shelds owed the bank, nearly $8,000; and also that the plaintiff surrender for cancellation the ten shares of capital stock in defendant's bank.

It will be noted that in the counterclaim the defendant is seeking no relief as creditor of M. L. Shields against the estate of M. L. Shields. The statement is that W. S. Shields, the plaintiff, entered into a conspiracy to cheat and defraud the defendant and makes that a basis of substantive relief demanded against W. S. Shields as an individual.

At the close of the testimony the judge instructed the jury that if they believed the evidence the plaintiff could not recover his demand for the stock or the value thereof. Verdict and judgment were so entered and the plaintiff excepted and appealed.

We have examined the entire evidence in this case and are utterly unable to perceive any testimony which proves or tends to prove that W. S. Shields ever entered into any conspiracy to cheat or defraud the defendant, or which tends to support any demand against W. S. Shields as an individual. His brother, M. L. Shields, had failed as a business man in Tennessee where he formerly lived, and there was evidence to the effect that he had proved himself improvident and incapable. Going to Greensboro, N. C., the plaintiff, who was his brother, furnished him money to buy an interest in a corporation carrying on a mercantile business, and also ten

shares of stock in the defendant bank, and took a mortgage or assignment of the stock in each to secure the advance. There was nothing done by the plaintiff directly to mislead any one. The plaintiff's deposition taken in the cause was offered by the defendant and appears to be direct, frank and full, and discloses the fact that he advanced his brother · money to help start him in business, took an assignment of the stock as security, and was not aware that his brother's business enterprises were not prospering, until his death disclosed the fact that he was insolvent.

It may be that the act of the plaintiff was calculated to give M. L. Shields a business standing in the community to which he was not entitled; but more than this is required to sustain the charges made in this answer. It must be proved as well as alleged that the plaintiff entered into a conspiracy to cheat and was a participant in a fraudulent purpose, either in the scheme or its execution, which worked injury to the defendant as a proximate consequence. *Brannock v. Bouldin,* 26 N. C., 61; *Stafford v. Newsom,* 31 N. C., 508.

As we have stated, there is nothing in the testimony supporting any such charge, and, on the admissions in the pleadings and proof of dividends due and unpaid, the plaintiff was entitled to the full relief demanded in the complaint, and, on plaintiff's appeal, there will be a

New Trial.

### DEFENDANT'S APPEAL.

HOKE, J. ' There were two issues in this case, one addressed to the plaintiff's demand and the other to the defendant's counterclaim. The judge below charged the jury that if they believed the evidence, to answer the issue on the defendant's counterclaim "nothing."

As we have said in the plaintiff's appeal, there is no evidence which sustains or tends to sustain the counterclaim of the defendant against W. S. Shields as an individual, and as

the question of the defendant's rights against M. L. Shields' interest in the stock is not presented in this case, the verdict and judgment below on the counterclaim are
Affirmed.