PETER DeFORD, Respondent, v. ISAIAH JOHNSON, Appellant.

Kansas City Court of Appeals, January 2, 1911.

1. HUSBAND AND WIFE: Alienation of Affections: Instructions. In an action for damages by a husband, for the alienation of the wife's affection, it was error for the trial court to include in an instruction purporting to cover the whole case, a direction for a verdict on the hypotheses that illicit relations, between the wife of plaintiff and her paramours, including defendant, were merely acts of common prostitution known to the husband and forgiven by him, as this was a matter for the consideration of the jury under proper guidance by the court.

2. ————: ————: ————. Where a wife voluntarily gives her affections to another, the latter doing nothing wrongfully to win such affections, no action can be maintained. Mere proof of abandonment and that the wife maintained improper relations with the defendant is not sufficient. It must be established that he was the enticer.

3. Instructions: Specific Objection. The trial court may with propriety call upon counsel during the trial to make objections to instructions, specific, but such practice should not be used as a technical device to foreclose the right of the defeated party to have substantial errors reviewed in the appellate court.

Appeal from Jackson Circuit Court.—*Hon. Hermann Brumback*, Judge.

152 App.—14

REVERSED AND REMANDED.

*Ben T. Hardin* for appellant.

*Bird & Pope* for respondent.

JOHNSON, J.—The cause of action alleged in the petition is that defendant wantonly, wrongfully and wickedly alienated the affections of the wife of plaintiff and thereby caused plaintiff to separate from her. Both actual and punitive damages are prayed. The answer is a general denial. Verdict and judgment were for plaintiff for five thousand actual and five hundred dollars punitive damages, and the cause is here on the appeal of defendant.

Plaintiff was an illiterate farmer, born and reared near Sibley in Jackson county. When a young man, he moved to the State of Washington, where, about seventeen years ago, he was married, at the age of twenty-three. Two children, both girls, were born of the marriage. In time, he moved with his family to Iowa and afterwards moved from that state to Jackson county, where he rented a farm from defendant, a farmer living near Sibley, and remained a tenant of defendant five or six years. Then he sold out his personal effects and moved with his family to Grangeville, Idaho. Asked his reason for moving to Idaho, he testified: "I call it he (defendant) got too smart and tried to run me too much and knowed mor'n I did about my business and always told my wife what ought to be done and what ought not to be done to my wife."

Correspondence was maintained between plaintiff and defendant after the removal of plaintiff. The letters of defendant were read to plaintiff by his wife and under cover of this correspondence, defendant wrote letters to Mrs. DeFord. As plaintiff could not read, a clandestine exchange of letters between his wife and defendant was carried on in safety for a

time.   Under pretext of business, defendant went to Idaho and visited at plaintiff's home a number of days. He returned to Missouri and resumed his secret correspondence with Mrs. DeFord.

While living in Missouri plaintiff twice had occasion to complain of the conduct of defendant towards his wife, and we think his evidence bears out his contention that he moved to Idaho to separate his wife from the attentions of defendant.   His suspicions were not allayed by the visit of defendant to his home in Idaho and finally they prompted him to make a secret and successful search of his wife's trunk for letters from defendant.   He had the bundle of letters he found there read to him and discovered from their salacious and historical effusions and statements that an adulterous relation had existed between defendant and Mrs. DeFord, which began some time before the hegira to Idaho.   On this discovery, plaintiff left his wife, came to Missouri and brought this suit.

The evidence of plaintiff tends to show that prior to the beginning of defendant's attentions to Mrs. DeFord, she was a good wife and mother, and that after she came under defendant's pernicious influence, she lost her affection for her husband and that the change wrought in her demeanor was so marked as to arouse his suspicion.   As is usual in such cases, defendant's efforts were directed to prove that Mrs. DeFord was unchaste and dissolute before he began his attentions to her.   The evidence adduced in support of his contention is substantial, but we find it is met by substantial evidence to the contrary introduced by plaintiff.   Further, there is evidence tending to show that plaintiff and his wife conspired to ensnare defendant, who is married, has grown children and is possessed of some wealth, and that plaintiff, guilty as his spouse, is playing the false role of an injured and innocent husband.   But this, likewise, is contradicted by substantial evidence.

We have stated enough of the facts to afford a proper understanding of the issues. The details of the evidence are too indecent and disgusting for repetition. At the close of the evidence, all the instructions asked by the parties were overruled and on its own motion, the court gave an instruction to cover the whole case which, in part, was as follows: ''And in your consideration of the evidence, you are instructed that the fact, if it be a fact, that the marital relations of the plaintiff and his wife were unhappy at times, or the fact, if it be a fact, that plaintiff's said wife desired and sought the love and affection of the defendant, or that said Mary DeFord was guilty of misconduct with other men, or that plaintiff's said wife had been guilty of infidelity with other men than the defendant, does not justify the defendant in alienating her affections from her husband, if he did so alienate them, and does not justify him in depriving the plaintiff of the comfort, society, assistance or affections of plaintiff's wife, if he did so deprive plaintiff. That is to say, if plaintiff's wife had rendered him unhappy by her conduct, or had bestowed her affections upon others, or had been guilty of misconduct with others or infidelity, the plaintiff had a right to forgive such actions of his wife and continue, notwithstanding such actions, to seek the comfort, society, assistance and affection of his said wife without the wrongful interference (if any) of the defendant preventing his regaining the affections of his said wife, or regaining her comfort, society, assistance and affection. But the jury may take into consideration all of the acts and conduct of the plaintiff and his wife in determining whether or not her affections were alienated by the defendant and whether or not the plaintiff was damaged thereby.''

In the instructions asked by defendant and in the argument addressed to this court, the theory is presented that plaintiff cannot recover if, as defend-

ant's evidence tends to show, his wife was so generally and notoriously immoral as to fall within the definition of a moral pervert. Witnesses for defendant say that when plaintiff came to Missouri, he left his wife in Iowa with the avowed intention of ending the marital relation and declared he had left her on account of her gross immorality with other men. The jury would have been justified in believing from evidence before them that the woman was no better than a common prostitute, that her depravity was known to plaintiff and that defendant was but one of the number of her paramours. On this hypothesis of fact, should plaintiff be allowed to recover?

The law very jealously guards the marital relation and looks with extreme disfavor on the intermeddler. An injured spouse may have a just cause for separation but may elect to condone the offense and abide by the situation. If he chooses to do so, a stranger has no right to intermeddle or to seek an advantage to himself on account of the delinquency. [Modisett v. McPike, 74 Mo. 636.] The action of the husband for the alienation of his wife's effections "extends to all cases of wrongful interference in the family affairs of others, whereby the wife is induced to leave her husband or to do such things as destroy the comfort or happiness of the married life." [3 Elliott on Evidence, sec. 1651.] The alienation may or may not be accompanied by debauchery and elopement. The wife may remain under the husband's roof and yet be entirely estranged or alienated from him. The husband "may maintain an action for the partial alienation of affections. It is not necessary for the plaintiff to show that there was affection and that defendant had completely alienated it; for although plaintiff's wife has no affection for the plaintiff, a third party has no right to interfere or cut off any chance of affection springing up in the future. Evidence offered by the defendant for the purpose of proving that there had existed

no affection between the husband and wife will not be heard as a bar." [3 Elliott on Evidence, sec. 1650; 15 Am. and Eng. Ency. of Law (2 Ed.), 862.] Such evidence is admissible only in mitigation of damages. [Morris v. Warwick, 85 Pac. 42.]

In the instruction given the jury, the learned trial judge accepted the foregoing rules and extended their application to cover the different hypotheses of facts permissible under the evidence. We think he extended the rules too far. Though the law will protect in his rights the injured husband who forgives and takes to his bosom his erring wife and will warn away the prowling disturber of domestic concord, nevertheless, it must be shown in an action for alienation that the defendant enticed the wife of the plaintiff. The authorities recognize a pronounced distinction between the essential elements of an action for the alienation of affections and an action for criminal conversation. In the latter the fact of adultery is all important and the fact of which of the guilty parties was the seducer is unimportant; while in the former the crucial issue is whether the defendant enticed the wife, alienated her affections, and injected himself between husband and wife to the destruction of their mutual happiness. We quote with approval from the opinion of the Court of Appeals of Kentucky in Scott v. O'Brien, 110 S. W. Rep. 260: "The general rule is that there is no ground for an action where a spouse voluntarily gives his or her affections to another, the latter doing nothing wrongfully to win such affections. To support an action for alienating a husband's or wife's affections, it must be established that the defendant is the enticer. Mere proof of abandonment, and that the husband or wife maintained improper relations with the defendant is not sufficient."

The rule is well stated in 3 Elliott on Evidence, section 1643: "To entitle the plaintiff to recover in an action for alienating affections, the burden of proof

is upon the plaintiff, and the plaintiff must show that there was a direct interference upon the part of the defendant that not only was there infatuation of the husband or wife for the defendant, but that the defendant by wrongful act was the cause of it.''

Contemptible was the conduct of defendant who, for no better motive than mere animal lust disgraced himself and his innocent family. We do not wonder at the indignation of the jury we find reflected in the verdict, but there is evidence not only substantial but very strong that in no sense was defendant the enticer of the wife of plaintiff. Acceptance of this evidence— and the jury were entitled to give it credence—would compel the belief that she is a depraved woman, bent on the gratification of lust and not particular in the choice of her guilty partners.

The fault of the instruction does not lie in what was said but in what should have been said but was left unsaid. The instructions offered by counsel covered every phase of the case but the court brushed them aside and on its own motion gave a written charge to the jury which purported to cover the whole case but which contained the glaring error of directing, in effect, a verdict for the plaintiff even on the hypothesis that the illicit relations between the wife of plaintiff and her paramours, including defendant, were merely acts of common prostitution known to the husband and complacently forgiven by him as fast as they occurred. The highly moral and humane rule that a man may forgive his erring wife cannot be used as a cloak for the prosecution of a predaceous lawsuit by a husband who has knowingly lived with a prostitute wife until the opportunity came to enrich himself. The jury should have been allowed to consider this phase of the case under proper guidance of the court.

We do not agree with counsel for plaintiff that defendant waived or failed to preserve the objection to the error we have noted, and that because he failed

to give the trial court a fair opportunity to correct the error, should not now be heard.   The dominant note of the defense throughout the entire trial was the subject of the error into which the court fell and the record leaves no room to doubt that defendant's theory of the case not only was formally preserved but was known and thoroughly understood by the trial court.

It appears that the court, before giving the instruction, called on counsel to specify their objections and warned them that no objections not specifically stated would be considered on motion for new trial. It is urged by plaintiff that the objections offered by defendant's counsel did not embrace the defect we have noted and that the court amended the instruction to make it conform to the views expressed by counsel. The office of objections to instructions is to give the court an opportunity to avoid error and we think the court, with propriety, may call on counsel to make their objections specific.   The practice so much indulged of using a general objection as a cover for a trap to be sprung in the appellate court should not be countenanced in cases where the trial court has endeavored to guard against error by calling for specific objections.   But on the other hand the practice followed in this case should not be used as a technical device to foreclose the right of the defeated party to have substantial errors reviewed in the appellate court and where, as here, it appears that the court and parties understood the nature and scope of the objection, the function of the specific objection should be regarded as fully performed though the objection be stated never so crudely. Things done hurriedly in the heat of trial often are poorly or loosely done, and a liberal construction should be given the language used in making a specific criticism of an instruction to the end of protecting both the court and the defeated party—the first against the ambuscades of a sharp practitioner

and the latter against being innocently impaled on the point of a hard and technical rule of practice. That the trial court understood that defendant had properly preserved his objections, including the one we find vital, is clearly disclosed in the colloquy between court and counsel at the hearing of the motion for a new trial. The record shows beyond question that the court was given a fair opportunity to avoid the error and, afterward, to correct it. This being true, it would be unjust to deprive defendant of his right to have the error corrected in this court.

The judgment is reversed and the cause remanded. All concur.