CORA CLAXTON, Respondent, v. MRS. L. D. POOL
and L. D. POOL, Appellants.

Springfield Court of Appeals, June 13, 1914.

1. HUSBAND AND WIFE: Alienation of Affections: Petition
   Examined and Held Sufficient. A petition in an action for
   the alienation of the affections of the husband of the plaintiff
   is examined and *held* sufficient to state a good cause of action.

2. ————: Alienation of Husband's Affections: Wife's Right of
   Action. A wife may maintain an action against third persons
   for enticing away her husband and alienating his affections.

3. ————: ————: Burden of Proof. To entitle plaintiff to
   recover in an action for alienation of affections, the burden
   of proof being upon plaintiff, it must be shown that there was
   a direct interference on the part of the defendant and that
   not only was there an infatuation of the husband or wife for
   the defendant, but that the defendant by wrongful act and con-
   duct was the cause thereof.

4. ————: ————: Extent of Proof Necessary. To sustain an
   action for alienation of affections there must be evidence that
   the party charged was the enticer, and this requires more than
   a mere showing of the abandonment and improper relations.

5. ————: ————: Evidence: Review: Sufficiency. In an action
   against a husband and wife for alienation of the affections of
   plaintiff's husband, evidence examined and considered sufficient
   to warrant the finding of the jury that defendant wife was the
   enticer and inducer of plaintiff's husband and the overruling
   of the defendant wife's peremptory instruction is sustained.

6. ————: ————: Character of Evidence. Evidence in an
   action for alienation of affections must be largely circumstan-
   tial. And while no one fact taken by itself may justify a
   verdict, all considered together may. And the jury has a right
   to reason from effect to cause.

7. INSTRUCTIONS: Alienation of Affections: Harmless Error.
   Although a certain expression in an instruction, isolated and
   alone, may be subject to criticism, yet where the remainder
   of the instruction cures the error and makes the meaning plain,
   the instruction is allowed to stand.

8. ————: Alienation of Affections: Approved Instruction. In
   an action against husband and wife for alienation of the

affections of plaintiff's husband, an instruction is examined and *held* to define clearly the elements necessary to be found and to properly cover all phases of the case so far as the defendant wife was concerned.

9. **TRIAL: New Trial: *Juror Disqualified: Fault of Defendant:* New Trial Not Granted.** Defendant sent to one of the members of the county court a list of names of men she thought would be fair jurors. Though the list was not used, it happened that two members of the trial jury were men whose names appeared on the list. Defendant's own act having brought about the situation she could not complain because the trial court refused to grant a new trial on the ground that these two jurors were prejudiced against her.

10. **HUSBAND AND WIFE: Alienation of Affections: Husband Charged as Joint Tort-feasor: Proof Required.** In an action against husband and wife for the alienation of the affections of the plaintiff's husband to charge the defendant husband as a joint tort-feasor would require that he not only had *knowledge* and gave his consent but also that he encouraged, aided or abetted his wife in her wrong or that he obtained some benefit from her acts which he ratified.

11. **PLEADINGS: Alienation of Affections: Petition Examined: Failing to Charge Husband as Joint Tort-feasor.** In an action against a husband and wife for alienation of the affections of the husband of the plaintiff the petition is examined and *held* not to charge the husband as a joint tort-feasor, but if charging him at all, merely upon the common-law liability of a husband for the torts of the wife.

12. **INSTRUCTIONS: Error in: Favorable to Appellant: Not Open to Appellant's *Criticism.*** In an action against a husband and wife for alienation of the affections of the husband of plaintiff, where the defendant husband would be liable for the wife's torts merely by reason of the marital relation, an instruction requiring the jury to find that the husband was a joint tort-feasor is not open to the complaint and criticism of defendants (appellants), because the error, if any was committed in their favor.

13. **HUSBAND AND WIFE: Husband's Liability for Wife's Torts: Married Woman's Act Does Not Affect.** A husband, as a general proposition, is liable for the torts of his wife and the provisions of the *Married Woman's Act* emancipating her so far as her property rights and the right to sue and be sued are concerned, do not relieve the husband of his common-law liability for her torts.

14. ———: **Wife's Torts: Alienation of Affections: When Husband is Not Liable.** A husband is not liable for the wrongs

of his wife to a third party by reason of her condct, where such conduct is also a violation of her marital duties to him. (ROBERTSON, P. J., dissenting.)

Appeal from Wright County Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED AS TO DEFENDANT MRS. L. D. POOL; REVERSED AS TO DEFENDANT L. D. POOL. CERTIFIED TO SUPREME COURT.

*F. M. Mansfield, C. A. Newton, J. T. Neville* and *Argus Cox* for appellants.

(1) The petition does not state a cause of action against defendant L. D. Pool as a joint tort-feasor. It is not enough to charge that he "had full knowledge and gave his consent" to the acts of his co-defendant. To make him responsible therefor he must not only have known and approved but have actually encouraged, aided or abetted. 38 Cyc. 485, 486; Brannock v. Bouldin, 26 N. C. 61; Fitzwater v. Fassett, 199 Pa. St. 442, 49 Atl. 310; Stanley v. Union Depot Ry. Co., 114 Mo. 606, 623, 624; Leavell v. Leavell, 114 Mo. App. 24, l. c. 31, 32. (2) The motion for new trial should have been sustained for the further reason that the jury that tried the case was not a fair and impartial jury, for the reason that two men who sat upon the jury were men whose names had been furnished to the county court upon a list from which to select the regular panel of jurors, and knowledge of that fact having been brought to the attention of these men during the trial, they could not be impartial thereafter. Gibony v. Transit Co., 204 Mo. 704, 717; Theobold v. Railroad, 191 Mo. 395, 416; State v. Wheeler, 108 Mo. 658, 663; State v. Taylor, 64 Mo. 358, 361; State v. Dafee (La.), 16 So. 734; Railroad v. Smith (Va.), 49 S. E. Rep. 487; 2 Thompson on Trials, par. 61 and 2560; Berst v. Moxem, 163 Mo. App. 123, 129. (3) The

right of action for criminal conversation was not given by the common law to the wife against another woman with whom her husband might have illicit sexual relation, and to allow this judgment to stand under the pretext of permitting her to recover for the alienation of her husband's affections when the only proof to show alienation is evidence which, it is contended, shows illicit sexual intercourse, would be in effect to give her a right of action for criminal conversation, a right which has never been recognized. Kroessin v. Keller (Minn.), 27 L. R. A. 685; 21 Cyc. 1617 and 1627. (4) There is no contention that defendant L. D. Pool did anything to cause a separation of plaintiff and her husband and there is no evidence that he in any way aided, abetted or encouraged his co-defendant to do anything to cause such separation, hence a demurrer to the testimony on his part should have been sustained. Cases cited under Point 2; State v. Cox, 65 Mo. 295; Wamsganz v. Wolf, 86 Mo. App. 205. (5) Instruction No. 1 was erroneous, misleading, and did not properly define the general issue of fact in the case. (6) Instruction No. 2 given on part of plaintiff is erroneous in that it permitted a recovery against L. D. Pool if he knew of and approved or encouraged Mrs. Pool to alienate the affections of the husband of plaintiff. This instruction is in conflict with all other instructions given in the case, and, since it cannot be determined by which instruction the jury were guided, it is reversible error. Sheperd v. Transit Co., 189 Mo. 362; Spillman v. Railway, 111 Mo. 555; Hickman v. Link, 116 Mo. 123; Butz v. Construction Co., 137 Mo. App. 222; Mining Co. v. Fidelity & Cas. Co., 161 Mo. App. 185; Pyburn v. Kansas City, 166 Mo. App. 150. (7) The instructions given for plaintiff and by the court of its own motion were erroneous in following the language of the petition instead of designating the facts necessary to be found by the jury to warrant a verdict for the plaintiff. Briscoe et al. v. Laughlin.

161 Mo. App. 76; Bank v. Dowler, 163 Mo. App. 65; Webb v. Carter, 121 Mo. App. 147.

*Jackson & Jackson* and *A. M. Curtis* for respondent.

(1) The petition states a cause of action as against both of the defendants—against Mrs. L. D. Pool, as the one actually committing the tort and against L. D. Pool as her husband. Flesh v. Lindsay, 115 Mo. 1, 21 S. W. 907; Nichols v. Nichols, 147 Mo. 387, 48 S. W. 947; Bruce v. Bombeck, 79 Mo. App. 231; Taylor v. Pullen, 152 Mo. 434, 53 S. W. 1086; Nichols v. Nichols, 134 Mo. 187, 35 S. W. 577. (2) Any irregularity or misconduct of jurors or counsel or court, must be objected to at the time it occurred, if not the same is waived. Railroad v. Martha S. North, 31 Mo. App. l. c. 354, 355; Charles P. Fink v. Lancashire Ins. Co., 66 Mo. App. l. c. 519; Katie Ern v. Samuel Rubinstein, 72 Mo. App. l. c. 343, 344; Grove v. The City of Kansas, 75 Mo. l. c. 677, 678; State v. Blunt, 110 Mo. 322, 19 S. W. 650; State v. Snyder, 182 Mo. 462, 82 S. W. 12. (3) Further it has been universally held by the appellate courts of this State that a party cannot assign that for error which he has invited himself. State v. Stephen Beaty, 25 Mo. App. 214; Davis v. Brown et al., 67 Mo. 313; O'Neill v. Blase, 94 Mo. App. 648, 68 S. W. 764; Sappington v. Chicago & A. R. R. Co., 95 Mo. App. 387, 69 S. W. 322; McDonald v. Tittman, 96 Mo. App. 536, 70 S. W. 502. (4) Respondent did not attempt to hold defendant, L. D. Pool, as a joint tort-feasor, but upon the common law liability of a husband for the tort of the wife. If the tort is committed in the husband's presence with nothing more appearing, it is his sole tort. Bruce v. Bombeck, 79 Mo. App. 231. (5) If it is committed in his presence, but the wife acts deliberately and freely, it is their joint tort. If it is com-

mitted in his presence and against his will, it is her tort, and he is liable with her. If committed out of his presence and by his direction, she is jointly liable with him. If committed out of his presence and without his knowledge or consent, he is liable with her. Bruce v. Bombeck, supra; Nichols v. Nichols, 147 Mo. App. 387. (6) Instructions 1, 2, and 3 as given by the court of its own motion correctly declare the law and are approved instructions with the exceptions that respondent claims that they required the jury to find more facts as against L. D. Pool, than is required by the law. Moidsett v. McPike, 74 Mo. 636; Barton v. Barton, 119 Mo. App. 531, 94 S. W. 574; Cornelius v. Cornelius, supra; Nichols v. Nichols, supra; Deford .v. Johnson, 152 Mo. App. 209, 133 S. W. 393. (7) An instruction requiring the jury to find more than was necessary for them to find, in order for plaintiff to recover, affords no ground of complaint to defendant. Seawell et al. v. Railroad, 119 Mo. 222, 24 S. W. 1002; Foster v. Railroad, 115 Mo. 165, 21 S. W. l. c. 920; Turney v. Baker, 103 Mo. App. 390, 77 S. W. l. c. 480, 481.

STATEMENT.—Plaintiff, Cora Claxton, recovered a judgment against the defendants, husband and wife, for five thousand dollars, grounded on a charge of alienating the affections of plaintiff's husband and causing him to abandon her. The cause of action is stated in the following amended petition:

"Comes now the plaintiff and for her amended petition alleges and says that the defendants, L. D. Pool and Mrs. L. D. Pool, are husband and wife. Plaintiff further states that on the 25th day of December, 1900, she was lawfully married to and became the wife of L. E. Claxton. That from the date of said marriage until the 10th day of April, 1912, she and her said husband, L. E. Claxton, continued to live together; that during all that time plaintiff faithfully demeaned her-

self and discharged all her duties as the wife of L. E. Claxton and she and her husband lived together and enjoyed the aid, support, companionship, society and affection of each other; that the defendant, Mrs. L. D. Pool, well knowing that plaintiff and L. E. Claxton were husband and wife, and that they were living together and enjoying the aid, support, companionship, society and affection of each other, with the full knowledge and consent of her said husband, L. D. Pool, wrongfully, wickedly and maliciously with the wrongful, malicious and wicked intent to cause plaintiff's said husband to leave and abandon plaintiff, and to cease living with plaintiff as her husband, and to deprive plaintiff of the aid, support, companionship, society, protection and affection of her said husband, did by her wrongful, wicked and malicious acts and conduct, extending over a period of one or more years prior to the 10th day of April, 1912, completely and entirely alienate the affections of him, the said L. E. Claxton, from plaintiff; and did on the 10th day of April, 1912, pursuant to her said wrongful, wicked and malicious intent, with the full knowledge and consent of her said husband, wrongfully, wickedly and maliciously did entice, influence and induce plaintiff's said husband to leave and abandon her; and her said husband being influenced and acting under the said wrongful, wicked and malicious enticements, influence and inducements of the defendant, Mrs. L. D. Pool, of which the defendant, L. D. Pool, had full knowledge and gave his consent, did then leave and abandon the plaintiff; and being influenced and acting under said wrongful, wicked and malicious enticement, influence and inducement, has ever since remained away from and separate and apart from plaintiff.

"Plaintiff further says that ever since said abandonment of plaintiff by her said husband the defendant, Mrs. L. D. Pool, with the full knowledge and consent of her husband, L. D. Pool, has wrongfully, wick-

edly and maliciously detained and harbored plaintiff's said husband and has kept him separate and apart from plaintiff, and has by her said wrongful, wicked and malicious acts and conduct, of which defendant L. D. Pool, her husband, had full knowledge and gave his consent, deprived plaintiff and still does deprive her of the aid, support, companionship, society, protection and affection of her said husband, and has by said wrongful, wicked and malicious acts and conduct completely and entirely alienated the affections of plaintiff's said husband.

"Plaintiff says that because of the wrongful acts and conduct of the defendant, Mrs. L. D. Pool, of which said acts and conduct the defendant, L. D. Pool, had full knowledge and gave his consent thereto, she has suffered great humiliation and distress of mind and disgrace, and by reason of the premises aforesaid she is injured in the sum of ten thousand dollars, for which she asks judgment."

A demurrer to the foregoing petition was overruled; likewise, a motion to make more definite and certain. Defendants then met the issues tendered by a general denial.

Before any evidence was offered, each defendant separately objected to the introduction of evidence for the reason that no cause of action was stated in the amended petition.

The parties all resided in Hartville, in this State. At the time of the trial defendant L. D. Pool was fifty-one years of age, and his codefendant, Mrs. L. D. Pool, was forty-six years of age. They had been married a number of years and had reared a family, two of their children being grown daughters. The plaintiff at the time of the trial was thirty-seven years of age, and her husband was thirty-two years of age. They had several children living at the time of the trial.

The defendant L. D. Pool conducted a hardware store in Hartville and his time was occupied in that business. Defendant Mrs. L. D. Pool conducted a millinery shop, where she with her daughter, Artie Pool, and at times other lady clerks, were occupied. The husband of the plaintiff (L. E. Claxton) conducted a dry goods and clothing store, and the rear of his store was located near the rear of the millinery shop of Mrs. Pool, and he employed her to alter garments sold in his store from time to time as customers required. This employment, together with the fact that Claxton passed through the millinery shop in going to and from the postoffice furnished an explanation or excuse for his being in the millinery shop a number of times. The evidence shows that his visits there were frequent and continued for such a length of time that his presence there was noted by numerous citizens of Hartville, and the gossip finally reached the ears of Claxton's wife, the plaintiff.

It appears from the evidence that Mrs. Claxton was of a jealous disposition, and had been suspicious at different times of half a dozen married women and girls in Hartville—suspicious that her husband was unduly friendly with them. On hearing of his frequent visits to the millinery shop, she talked with Mrs. Pool about the gossip that was being passed from tongue to tongue and indicated that she would like to have the visits stopped.

The Claxton and Pool families were related by marriage and they were intimate. At various times prior to the separation of the plaintiff and her husband, the two families went to church together, and visited as relatives and friends are accustomed to do. Although plaintiff protested on several occasions to the defendant Mrs. Pool about allowing Claxton to visit the millinery shop, such visits continued, and the relations, so far as Claxton and the two defendants were concerned, seem to have never changed.

Some time before the separation of Claxton and his wife, defendant L. D. Pool was informed that Claxton was making frequent visits to the millinery shop and that there was a great deal of talk around town about the matter. The testimony shows that plaintiff was not suspicious of defendant Mrs. Pool at the time she protested about her husband's visits, but that plaintiff then thought her husband was going to the millinery shop to visit and be with the defendants' daughter, Artie Pool.

This condition continued until one evening soon after dark when plaintiff went to the rear of the Pool residence to see if her husband was there and if so what he was doing. After remaining in the alley behind the house a short time she saw her husband enter the granary and then saw defendant Mrs. Pool make several trips into the back yard near the granary and finally go into the granary and stay a short time during which time plaintiff heard a noise like kissing. The defendant Mrs. Pool, according to plaintiff's testimony, then went back to the house and plaintiff's husband left the granary and went his way not knowing that his wife was near. As to this episode, the plaintiff is corroborated by the sheriff and deputy sheriff who say they saw the defendant Mrs. Pool enter the granary and after being in there a while leave the same, and that the husband of the plaintiff left the granary after her. On this night, defendant L. D. Pool was not at home, nor were his two daughters.

Several nights later plaintiff went to the Pool residence with a club and when Mrs. Pool came to the door plaintiff struck her with the club, after which the fighting between the two women became general. It seems that Mrs. Pool finally overpowered the plaintiff and drew her into the house and held her down on a sofa until help could be summoned. Mr. Pool was sent for and immediately came, whereupon plaintiff related to him what she saw take place at the

granary several nights before and referred him to the sheriff and deputy for corroboration. Pool was afterward informed·by such corroborating witnesses that they saw what plaintiff told him occurred.

There is no evidence that defendant L. D. Pool was ever present at his wife's shop when Claxton was there. There is evidence that the night of the fight, after matters had quieted somewhat, Pool remarked that if he were Claxton he would never live with the plaintiff again, and this remark was made after he had been informed of the granary incident. Claxton came to the Pool home that night and had a talk with the two defendants, the substance of which is not disclosed, and then left and never again returned to his wife. There is evidence that after the separation of ·Claxton and the plaintiff, when the former had gone to Carthage, Mo., he sent a letter to the defendant Mrs. Pool written to him by his wife. This letter was given by Mrs. Pool to Mr. Pool who at first put it away and then 'destroyed it, and its contents remain unrevealed.

All the testimony goes to show that defendant L. D. Pool never believed there was any misconduct between his wife and Claxton and at all time stood by her and protested her innocence of any immoral conduct.

At the close of all the evidence each defendant offered separate peremptory instructions in the nature of demurrers to the evidence which were overruled.

## OPINION.

FARRINGTON, J.—We will first discuss the peremptory instruction offered by defendant Mrs. Pool, then the instructions complained of, as under the view we take of the case this will dispose of the appeal so far as Mrs. Pool is concerned, and lastly we will consider the question.of the liability of defendant L. D. Pool.

In considering this case it will be well to bear in
**Liability of Mrs. Pool.** mind some of the well established general principles of law relating to this question.

As against the defendant Mrs. L. D. Pool, the petition is good, following, as it does, approved forms. [Nichols v. Nichols, 134 Mo. 187, 35 S. W. 577; Nichols v. Nichols, 147 Mo. 387, 48 S. W. 947; Cornelius v. Cornelius, 233 Mo. 1, 135 S. W. 65.]

In this State, since the decision of the case of Clow v. Chapman, 125 Mo. 101, 28 S. W. 328, the wife may maintain an action against third persons for enticing away her husband and alienating his affections for her, just as the husband could maintain such an action at common law. [Nichols v. Nichols, 134 Mo. l. c. 192, 35 S. W. 577; Nichols v. Nichols, 147 Mo. l. c. 400, 48 S. W. 947; DeFord v Johnson, 251 Mo. 244, 158 S. W. 28; Gambino v. Manufacturers' Coal & Coke Co. (Mo. App.), 158 S. W. 77.]

The argument is advanced in behalf of Mrs. Pool that even though there existed undue intimacy between herself and plaintiff's husband and even though this amounted to illicit sexual intercourse, still no case is made out showing that she was the enticing and producing cause of the alienation and separation, and that the evidence shows that plaintiff's husband alienated his own affections for plaintiff and that Mrs. Pool's acts were at most only passive in their nature.

We fully recognize the rule laid down in 3 Elliott on Evidence, sec. 1643, which is as follows: "To entitle the plaintiff to recover in an action for alienating affections, the burden of proof is upon the plaintiff, and the plaintiff must show that there was a direct interference upon the part of the defendant that not only was there infatuation of the husband or wife for the defendant, but that the defendant by wrongful act was the cause of it." That rule was quoted with approval in the case of DeFord v. Johnson, 152 Mo. App. l. c. 214, 215, 133 S. W. 393.

It is also good law in this State and elsewhere that to sustain the action there must be evidence that the party charged is the enticer, and this requires more than a mere showing of the abandonment and improper relations. [DeFord v. Johnson, supra; Scott v. O'Brien (Ky.), 110 S. W. 260; Buchanan v. Foster, 48 N. Y. Supp. 732; Waldron v. Waldron, 45 Fed. 315.] There must be proof of direct interference sufficient to satisfy the jury that the wrong was caused by the defendant. [15 Am. & Eng. Ency. Law, 865, 866; 21 Cyc. 1621, note.] In the case of Waldron v. Waldron, 45 Fed. 1. c. 321, we find this language which we think pertinent to the point under consideration: "We know, as a matter of common knowledge and observation, that, as a general rule, men woo and women are wooed and won; that men seduce and allure and lead women from the path of virtue, and that women are allured, seduced and led astray; but we also know, from common observation, that this general rule does not always hold, and that sometimes women woo men; that sometimes women allure, seduce, and debauch men; that women upon occasion, induce, allure, seduce, and persuade men to abandon and desert their wives, and form new relations, lawful or unlawful. It will be for the jury to say, from all the evidence, what were the facts in this case, and whether the issue stands proved or unproved."

Plaintiff's evidence tended to show that she and her husband lived together some ten or twelve years and that they were rearing a family and that they got along without much discord; that some year' or more before the separation plaintiff noticed a coolness toward her on the part of her husband. In July, 1911, she heard that there was gossip about him visiting Mrs. Pool's millinery shop and she advised Mr. and Mrs. Pool of this town talk and requested that they have Claxton stop his visits there. Nevertheless, the visits continued the same as before, and they

were almost daily. Plaintiff's evidence shows that her husband was seen late one evening with Mrs. Pool in a position which was changed as soon as the witness' presence was ascertained, whereupon Mrs. Pool stated that Claxton was making out an order for some goods, it further appearing in evidence that Mrs. Pool was unable to read or write with any efficiency. It is shown that on one occasion Mrs. Pool rode in the same seat with Claxton when she knew the plaintiff had protested and wished to occupy that place herself; that at another time, when Claxton and his wife met Pool and his wife taking a walk, Claxton was asked to come and walk with the Pools and let Mrs. Claxton go on with others, which he did; that Mrs. Pool called for him and talked with him over the telephone when he was at his home; that on one occasion when plaintiff's husband was going away, Mrs. Pool told plaintiff that he would not have called her up to tell her of his departure had not she (Mrs. Pool) told him to do so. This condition of affairs continued, with the plaintiff making protests and Mrs. Pool knowing that plaintiff was suspicious and desirous that her husband cease paying visits to the millinery shop, and finally the granary incident occurred, which, according to the testimony of plaintiff and her corroborating witnesses, savors strongly of immoral conduct, after which, within a day or two (on April 10, 1912) the separation took place. Plaintiff's evidence further shows that after this the plaintiff's husband was seen with Mrs. Pool, and that after leaving Hartville, Claxton sent her a letter which had been written to him by his wife. Plaintiff's evidence further showed that on one occasion when Claxton was passing Mrs. Pool's millinery shop a note was dropped on the sidewalk which he picked up and read and then went into her shop. Also, that defendant Mrs. Pool remarked after the separation of plaintiff and Claxton that when plaintiff

would acknowledge she did her a wrong, she (Mrs. Pool) would help bring about a reconciliation.

Defendants' evidence tended to establish a denial and explanation of the above detailed circumstances and that the relation amounted to nothing more than right acting. The jury drew inferences sustaining plaintiff's contention. That the jury could reasonably infer from the evidence that the relation existing between plaintiff's husband and Mrs. Pool brought about an alienation of Claxton's affections for his wife and the subsequent separation, no one will contend, and that such relation, if it did exist, was induced by some one cannot be denied; it was for the triers of the fact to say from all the evidence and conditions presented to them who was the enticing party, and having done so, their decision must settle that fact in this court. The jury has a right to reason from effect to cause. [Cornelius v. Cornelius, 233 Mo. 1, 135 S. W. 65.] They had before them the final separation, the evidence of circumstances pointing to immoral conduct, and the constant visits paid Mrs. Pool covering a long period of time. Her knowledge that such attention as Claxton was paying was against the plaintiff's wishes, with no protest or attempted protest on Mrs. Pool's part, is also shown. It may be said that no one fact taken by itself will justify the verdict, yet all considered together do. Evidence in a case touching the issue here involved must of necessity be largely circumstantial. It may be likened to the coming of a fog: You cannot point to the exact place whence it comes or know the exact moment it arrives, yet in the course of time no one doubts its presence and envelopment. Were there any doubt concerning the question here, it would be removed upon reading the case of Linck v. Vorhauer, 104 Mo. App. 368, 79 S. W. 478, where, on a state of facts of much less probative force than those with which we are dealing the court upheld a verdict to the effect that the woman was the enticer and in-

ducer, and the brief of appellant in that case shows that the point contended for here on Mrs. Pool's peremptory instruction was there pressed upon the court. It follows from what has been said that the trial court in the case at bar properly overruled the peremptory instruction requested by defendant Mrs. Pool.

Instructions 1 and 2 given for the plaintiff, insofar as they relate to the defendant Mrs. Pool, are not The Instructions. subject to the criticism of appellants' counsel. They are almost word for word copies of instructions 1 and 3 given and approved in the case of Modisett v. McPike, 74 Mo. 636. Plaintiff's instruction 3 finds authority to support it in DeFord v. Johnson, 152 Mo. App. 209, 133 S. W. 393; Barton v. Barton, 119 Mo. App. l. c. 531, 94 S. W. 574; Cornelius v. Cornelius, supra; Nichols v. Nichols, supra. The instruction is as follows:

"The court instructs the jury that in order to maintain this action, it is not necessary that plaintiff prove by the evidence that she had at any time the love and affection of her husband. That under the law a stranger has no right to voluntarily and unasked interfere with and disturb the concord and unity of the domestic relation or to interfere and *by any chance cut off* or prevent the possibility of a future affection springing up between two spouses. That the plaintiff had the right to seek the comfort, companionship, protection and aid of her husband without the interference of any outside person and although the jury may believe from the evidence in this cause that the home life of plaintiff and her husband was unpleasant, nevertheless this would not justify defendant Mrs. L. D. Pool in voluntarily intermeddling with plaintiff's domestic affairs, if she did so intermeddle, and if the jury believe from the evidence that plaintiff's husband still would have lived and remained with her if it had not been for the wrongful acts, conduct and influence of defendant Mrs. L. D. Pool, if any, and that

he was induced to separate and remain apart from plaintiff by the intentional wrongful acts, conduct and influence of defendant Mrs. L. D. Pool and that said acts, conduct and influence was naturally calculated to cause such separation, then your verdict will be for plaintiff and against Mrs. L. D. Pool.''

We have written in italics the words ''by any chance cut off.'' This part of the instruction, standing alone, is subject to criticism. It should have been written ''cut off any chance.'' However, the remainder of the same instruction shows plainly that the jury was to find that wrongful and intentional acts, conduct, influence, etc., prevented a reconciliation. The instruction itself cured the error.

Instruction 7 given by the court of its own motion clearly defined the elements necessary to be found, and covered the case so far as Mrs. Pool was concerned. It is as follows:

''Before you can find the issues for plaintiff against defendant Mrs. L. D. Pool you must believe and find from the evidence that she intentionally influenced the husband of the plaintiff to withdraw his affections from plaintiff and desert her. It is not enough for plaintiff to show merely that defendant Mrs. L. D. Pool was friendly with the husband of plaintiff, knowing at the time that he and the plaintiff were having discord in their marital relations, nor is it sufficient that you should believe merely that defendant's conduct in her association with plaintiff's husband amounted to impropriety or was even of a scandalous nature, but before you can find for plaintiff, it must be shown by the evidence that defendant Mrs. L. D. Pool's conduct, in her association with the husband of plaintiff, was improper and wrongful and further that Mrs. L. D. Pool intended by such conduct to cause plaintiff's husband to withdraw his affections from her or desert her, and in addition to this, it must be shown by the evidence that such conduct on the part

of defendant Mrs. L. D. Pool did in fact cause the husband of plaintiff to withdraw his affections from plaintiff or desert her. If plaintiff has failed to prove any one of these alleged facts by the greater weight of the evidence, it will be your duty to find the issues for defendant Mrs. L. D. Pool.''

All phases of the case were covered by the instructions given, which makes it unnecessary to review the assigned errors in the court's refusal to give other instructions offered by the defendant Mrs. L. D. Pool.

As to the assignments concerning the admission Exceptions    and exclusion of testimony, in several in-
to Evidence.    stances we find that proper exceptions were not saved, and in none of these rulings was reversible error committed.

Just preceding a former term of the circuit court The Jury    when Mrs. Pool thought this case would be
Question.    tried, she sent a list of names to one of the members of the county court (there is no evidence that defendant L. D. Pool knew of this list until after it was sent)—names of men she thought would be fair jurors. The list was not used by the judge of the county court. At the next succeeding term of the circuit court when this case was tried, the fact developed that two members of the trial jury were men whose names appeared on the list which Mrs. Pool had sent to the judge of the county court. This fact came out in evidence. Mrs. Pool now claims she is entitled to a new trial on that account because such two jurors could not have been fair to her. She certainly was responsible for the condition brought about and cannot now complain of the trial court's exercise of discretion in refusing to grant a new trial on that ground.

It follows that the judgment is amply sustained both in law and fact as to defendant Mrs. L. D. Pool.

In considering the liability of the husband, L. D. Liability of    Pool, it will be well to observe that the
L. D. Pool.    petition does not charge him as a joint

tort-feasor with his wife, alleging only that what his wife did he had knowledge of and gave his consent to. To charge that he was a joint tort-feasor would require that he not only had knowledge and gave consent, but that he encouraged, aided or abetted his wife in her wrong or that he obtained some benefit from her acts which he ratified. [State v. Cox, 65 Mo. l. c. 33; 38 Cyc. 485, 486; Wamsganz v. Wolfi, 86 Mo. App. l. c. 215, 216; Leavell v. Leavell, 114 Mo. App. 24, 89 S. W. 55; Brannock v. Bouldin, 26 N. C. 61.] Indeed, counsel for respondent in their brief assert positively there is nothing in the case which would hold L. D. Pool as a joint tort-feasor. He is charged and the proof goes no farther than to show that the plaintiff's husband was unduly friendly with Mrs. Pool and that she was having immoral and improper relations with him. If Pool's refusal to believe the gossip, and his constant belief in the fidelity of his wife, can be construed into a consent to her wrongful conduct,—then he consented. We find no fact or circumstance, however, in this record from which it can reasonably be inferred that L. D. Pool did anything himself or had his wife do anything by his direction, or that there was anything that resulted in benefit to him, by which to hold him as a joint tort-feasor. If he is liable at all, it can only be on the common-law liability of a husband for his wife's torts, and this is the theory pressed for affirmance as to appellant L. D. Pool by respondent's counsel.

It is doubtful what theory the trial court had in mind in submitting the question of Pool's liability to the jury. Instructions 1 and 8 only permitted a recovery against him predicated on his being a joint tort-feasor in that the jury must find that he knew of, encouraged, and advised his wife in her wrongful acts, while instruction 2 permitted a recovery against him "if from all the evidence the jury believe that defendant Mrs. L. D. Pool with the knowledge and approval

or encouragement of L. D. Pool intentionally per-
suaded, influenced or induced plaintiff's husband to
separate and remain apart from her.'' Respondent,
if she be correct in her contention that the husband
is responsible on the facts of this case merely by rea-
son of the marital relation on the common-law doc-
trine of liability of the husband for his wife's torts,
is correct in her further contention that if the court
put a greater burden on her than the law imposed
(by requiring the jury to find that the husband was a
joint tort-feasor) the appellants are in no position to
obtain a reversal of the judgment because the error
committed was in their favor. [Seawell v. Railroad,
119 Mo. 222, 24 S. W. 1002; Foster v. Railway Co., 115
Mo. 165, 21 S. W. 916.]

As a general proposition of law it is settled in
this State that the husband is liable for the torts of
his wife, and that the Married Women's Acts emanci-
pating her so far as her property rights and the right
to sue and be sued are concerned do not by express
language or implication relieve the husband of his com-
mon-law liability for her torts. [Taylor v. Pullen, 152
Mo. 434, 53 S. W. 1086; Flesh v. Lindsay, 115 Mo. 1,
21 S. W. 907; Nichols v. Nichols, 134 Mo. 187, 35 S. W.
577; Nichols v. Nichols, 147 Mo. 387, 48 S. W. 947;
Bruce v. Bombeck, 79 Mo. App. 231; Clow v. Chapman,
125 Mo. 101, 28 S. W. 328; Love v. Love, 98 Mo. App.
562, 73 S. W. 255; Leavell v. Leavell, 114 Mo. App.
24, 89 S. W. 55.]

In the opinion in the case of Bruce v. Bombeck,
supra, l. c. 235, five instances are given where the hus-
band is liable for his wife's torts, namely: ''(1) If the
tort is committed in the husband's presence, and noth-
ing more appears, it is his sole tort, as the wife is pre-
sumed to have acted under his coercion. (2) If the
tort is committed in his presence, but she appears to
have acted deliberately and freely, it is their joint
tort. (3) If the tort is committed in his presence and

against his will, it is her tort, and he is liable with her. (4) If the tort is committed out of his presence, but by his direction, she is jointly liable with him. (5) If the tort is committed out of his presence and without his knowledge or consent, he is liable with her. [9 Am. & Eng. Ency. of Law, p. 823, and cases cited.]''

It will be noted that none of the instances there set out correspond with the situation here, because the evidence shows that the wrongs committed, if at all, were not in the presence of the husband sought to be held, yet the charge is that they were committed with his knowledge and consent. The substantial evidence of wrongful conduct on the part of plaintiff's husband and Pool's wife is that concerning the frequent visits to Mrs. Pool's shop, the questionable conduct therein, and the evidence of immoral conduct at the granary. At no time was the husband of Mrs. Pool present when these relations were going on and there is no evidence that he ever had any more than a knowledge that there was gossip around town that plaintiff's husband went to the millinery shop too often from which certain persons drew the conclusion that there were improper relations existing. It is true, he remarked that ''people will talk anyway,'' and that he did not, as he might have done, fly into a rage about it. Yet his course may be easily accounted for in that all the evidence shows that he had implicit faith in his wife's fidelity. Must he be condemned and mulct in damages because he placed that faith in his wife that is commendable in a husband, and because, forsooth, he did not believe the town gossip concerning her?

In all the cases we have examined where the husband is held liable for his wife's tort, the wrong committed by her was not one that was at the same time an equal or greater wrong to her husband. Here the jury has found that defendant Pool's wife by a course

of wrongful and immoral conduct has damaged the plaintiff, which conduct, if it occurred, breached a higher duty owing by the defendant wife to her husband than any she owed the plaintiff. If, by her relations with the plaintiff's husband, she wronged and injured the plaintiff, much greater was her wrong and injury to her own confiding husband. We have been cited to no case in America or England where the husband is held liable for the tort of his wife growing out of a course of conduct which inflicted a wrong on him condemned by natural, moral and municipal law alike, and we are confident that none exists. We are therefore not bound by precedent or controlling authority.

Admitting that the extent to which the doctrine that a husband is liable for his wife's torts is based on some good reasons, we are not willing to extend its bounds here, where to do so would shock the sense of justice. The maxim that governed the courts in centuries gone by applies with equal force today—"The law never works an injury, or does a wrong." [Jenk. Cent., 22.]

Such a case could only have arisen in comparatively recent times as it has only been since the Married Women's Acts have been passed that the injured wife could sue at all for wrongs done her. In the case of Leavell v. Leavell, 114 Mo. App. 24, 89 S. W. 55, which undertook to hold the husband and wife as joint tortfeasors, we find the following language (l. c. 31, 32): "If Mrs. Leavell did not wrongfully influence Garfield to abandon plaintiff, then the verdict and judgment should not have been against her. Or, if Mr. Leavell did not so influence Garfield, but his wife did by acts out of the presence of Mr. Leavell, then the verdict should have been against her and not him." Had the learned judge in that case thought the husband responsible on the marital relation for the wife's tort he would have treated the joint tort-feasor theory as

surplusage, and would not have used the words above quoted: ''Or, if Mr. Leavell did not so influence Garfield, but his wife did by acts out of the presence of Mr. Leavell, then the verdict should have been against her and not him.''

We are not entirely without precedent so far as the *principle* we are applying here for the first time on the question of liability for tort. The common law of England held the husband responsible for the wife's ante and postnuptial contracts, and this for the same reasons that he was held liable for her torts during coverture. Yet we find that where a husband went out of the realm of England leaving his wife and children with a sufficient fund for their maintenance and on his return found that she had formed an adulterous connection with another man and had contracted debts of necessity for his children in his absence, he was not liable for those debts, it being held that her conduct in living in a state of adultery divested her of the authority arising out of the marital relation. [See, Atkyns v. Pearce, 89 E. C. L. 762.] Nor was a man liable to the penalty for neglecting and refusing to maintain his wife who had left him and committed adultery. [See, The King v. Flintan, 20 E. C. L. 464.] We therefore hold, on principle, that a husband is not liable and has never been held liable at common law for the wrongs of his wife to a third person by reason of her conduct where such conduct is also a violation of her marital duties to him.

Defendant L. D. Pool's instruction 15 correctly declared the law and should have been given if the evidence had justified the charge that L. D. Pool was a joint tort-feasor.

In conclusion, we feel that a few remarks on the general state of the law relative to the liability of the husband for the torts of his wife may not be out of place. It has not been necessary for us, as has been shown, to do violence to any controlling decisions in

this State on this question. The Supreme Court has ruled that it will require an act of the Legislature to remove the liability from the husband. We therefore feel that such an act, which might be termed an act emancipating the husband from all liability on account of the marital relation for the torts of his wife, would meet with favor. The law has already emancipated the person and private rights of the married woman, and her status as a citizen has through education and religion been by common consent raised up to, if not higher than, that of her brother man. With this condition prevailing, certainly no reason now exists for adhering to the rule which has been termed a "barbarous common-law fiction." [See, Clow v. Chapman, 125 Mo. l. c. 105, 28 S. W. 328.] We believe that such an act would be welcomed, recognizing that the reasons for the rule once necessary in a barbarous state of society do not exist in Missouri, and that the husband be no longer liable for any of the torts of his wife merely by reason of the marital relation.

It follows from what has been said that the judgment is affirmed as to defendant Mrs. L. D. Pool and reversed as to defendant L. D. Pool.

*Sturgis, J.,* concurs. *Robertson, P. J.,* dissents in a separate opinion and asks that this cause be certified to the Supreme Court for the reason that he deems the foregoing opinion contrary to previous decisions of the Supreme Court, and it is so ordered.

## DISSENTING OPINION.

ROBERTSON, P. J.—In the result of the majority opinion, except as to the holding that defendant, L. D. Pool, is not liable, I concur. The conclusion reached in that opinion as to his exemption is not, I think, justified by the decisions of the Supreme Court of this State. The general rule is recognized by the majority that in this State the husband is liable for the torts

of his wife but he is absolved in this case, as it is stated, because the wife, in committing the wrong for which he is sought to be held, at the same time outraged and damaged him and violated a higher duty to him than she owed the plaintiff and that, therefore, to apply the rule would shock the sense of justice—ostensibly to defendant L. D. Pool. This postulate, I think, ignores the justice due the plaintiff.

In discussing the common-law liability of the husband for the torts of his wife, Judge GANTT, in Taylor v. Pullen, 152 Mo. 434, 439, 53 S. W. 1086, states that "so far no writer or court has as yet furnished satisfactorily all the reasons which may have influenced the adoption of the rule at common law, and until they are produced, certainly the courts cannot declare that all the reasons have ceased and thus abolish the rule by judicial decision."

The opinion in Nichols v. Nichols 147 Mo. 387, 408, 48 S. W. 947, discusses the effect of the "Married Woman's Act" (now sections 8304, 8308, 8309 and 8310, R. S. 1909) and applies the principle that the expression in said section 8310, that the husband shall be exempt from all liabilities incurred by the wife before their marriage (which, as I understand, relieved the husband from some liabilities existing at common law), is in effect the exclusion from said Act of any other exemption from liabilities which existed at common law. Further, in that opinion, in discussing the common-law reason for holding the husband accountable for the wife's torts, it is said that because under that law the husband absorbed the wife's property was not the chief reason, though that may have been sufficient, but a *broader one* existed which was that the husband possessed the power of control and therefore *owed a corresponding duty to society for the conduct and actions of his wife;* that this basis for his liability was not removed by legislative interference, and that so long as that reason remains, whether or

not sufficient, it is for the Legislature and not the courts to change the rule. This opinion and the one in Flesh v. Lindsay, 115 Mo. 1, 13, 21 S. W. 907, are cited with approval in Taylor v. Pullen, 152 Mo. 434, 439, 53 S. W. 1086, supra.

The Supreme .Court in the Taylor case, refused to engraft any exception onto the rule that was not shown to be such as was known at common law, yet the majority opinion in the case under consideration entertains an exception on the theory, as I understand it, that no case has been presented where liability was fixed on similar facts. However, it may be suggested that in many cases, not necessary to collate here, where the husband has had to respond in damages for the torts of the wife, he has suffered pecuniary loss by reason of her acts in addition to the damages he was called upon to liquidate. Under the rule announced in the majority opinion, as I read it, if the wife in committing a tort also damages her husband he is by reason thereof exempted from liability conformable to the common law.

But, if the exemption recognized by the majority opinion should be said to be based on the assumption that the wife in committing a tort of the character here involved violates the marital contract, the reason for the common-law rule announced in the Nichols case, supra, based on his power to control and his duty to exercise such power, should not be overlooked. Must the plaintiff's marital happiness be surrendered, her home ruined and the lives of her children blasted without recompense by reason of acts of the defendant's wife, and the husband be exempted from the general rule of the common law in force in this State because in the commission of that wrong on plaintiff the husband of the guilty wife also suffered a wrong, but which might have been prevented by him, or, as the record discloses, which he has condoned? The defendant husband did not admit the guilt of his wife and

ask for the mercy the majority opinion gratuitously bestows upon him at the expense of the plaintiff and her children.

A reading of the English cases cited in the majority opinion to the proposition that the husband was not liable for necessaries furnished his wife while she was living away from him discloses that they are based on the idea of agency. Other cases may be found where such liability is denied on the theory that she has forfeited *her* right to *support*, of which *the third party had notice*, and for acts which the husband had not condoned.

It is evident to me that the exception made by the majority opinion is now for the first time engrafted upon the rule that holds the husband liable for the torts of the wife, which it is held in the Taylor case, supra, should not be done since it did not exist at common law. One ground for the assertion that this exception did not exist at common law is that the reason for it did not then exist. The husband then taking all of the wife's property must of necessity have responded for *all* of her *torts*. However, because this situation no longer exists under our statute furnishes no reason, I think, for the exception made by the majority of this court.

Deeming the opinion of the majority in conflict with the decisions of the Supreme Court in the cases of Flesh v. Lindsay, 115 Mo. 1, Nichols v. Nichols, 147 Mo. 387, and Taylor v. Pullen, 152 Mo. 434, this case must be certified to that court for final decision.