# HARVEY T. KOHLHOSS *vs.* WALTER W. MOBLEY.

*Action of Criminal Conversation—Connivance of Husband a Bar—Evidence—Confession by Wife.*

Connivance on the part of a husband is a bar to an action for criminal conversation with his wife, and whether there has been such connivance is generally a question of fact for the jury.

But when the conduct of the husband, as established by undisputed evidence or admitted in his own testimony, is such that a rational mind could draw no other conclusion therefrom than that he consented, actively or passively, to the illicit intercourse between his wife and the defendant, then the Court should withdraw the case from the jury and direct a verdict for the defendant.

If a husband passively permits and consents to the commission of adultery by his wife, it is as much connivance as an active conspiracy, and is a bar to an action of *crim. con.*

The evidence in this case examined and held to establish that the plaintiff connived at the adultery of his wife with the defendant.

In an action of criminal conversation a written confession of the adultery charged in the form of a recital of past events signed by the plaintiff's wife, out of the presence of both plaintiff and defendant, is not admissible in evidence.

Appeal from the Circuit Court for Frederick County (HENDERSON and MOTTER, JJ.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*H. Maurice Talbott* and *George A. Pearre, Jr.* (with whom were *Wm. P. Maulsby, Jr.,* and *Wm. H. Talbott* on the brief ), for the appellant.

The case should have been left to the jury because the question whether or not plaintiff was guilty of connivance was a question of fact to be passed upon by the jury.

It is for the Court to decide as to the sufficiency in law of the evidence, but its sufficiency in fact is for the exclusive cognizance of the jury. *Clark* v. *Dederick,* 31 Md. 148; *Poe's Prac.,* sec. 294. The Court has no power to examine and decide upon the comparative weight of the evidence that is exclusively for the jury. *Balto. Elev. Co.* v. *Neal,* 65 Md. 459.

It must be noted that we are dealing with the question of connivance, in an action for criminal conversation at law before a Court and jury, and not with the question of connivance in a Court of equity in divorce proceedings. In the latter case the Judges pass upon both the law and the fact, and are controlled by the restrictive maxim, Who comes into equity must come with clean hands. It will be found upon an examination of the cases, that where the Courts ruled as a matter of law that the plaintiff could have no remedy, on account of connivance, that these cases were actions for divorce in Courts of equity when the Court had the right to pass upon the law and the fact. *Morrison* v. *Morrison,* 136 Mass. 310.

Connivance is the corrupt consenting to evil conduct in the other, of which the party consenting afterwards complains. 2 *Bishop, M. D. S.,* sec. 203.

In *Dennis* v. *Dennis,* 68 Conn. 194, the Court said, connivance is a thing of the *intent* resting in the mind, it is the consenting. Bouvier says, it must be the *act of the mind before the offense has been committed.*

It is psychological and not physiological.

Like malice in civil cases, like due care, like good faith, it is a question of fact for the jury.

An examination of the cases will show that the question of connivance, in actions at law, for criminal conversation has always been left to the jury.

In the leading case of *Duberly* v. *Gunning*, 4 Durnford & East. 650, LORD KENYON told the jury, that if they were of the opinion that the husband consented to the infidelity of his wife, that that took away altogether the grounds of action, and they should find for the defendant. If they thought that he had not gone that length, but had been guilty of gross negligence or inattention to her conduct, that would go in mitigation of damages, the jury found a verdict for the plaintiff for 5,000 pounds, defendant applied for a new trial on the grounds 1st, that the verdict was altogether against the evidence, and 2nd, that the damages were excessive. New trial refused. See also *Winter* v. *Henn*, 4 C. P. 494; *Lowe* v. *Massey*, 62 Ill. 47.

The following cases for criminal conversation show that the question of connivance was left to the jury. *Smith* v. *Masten*, 15 Wend. 270; *Bunnell* v. *Greathead*, 49 Barb. 106; *Rea* v. *Tucker*, 51 Ill. 110; *Prettyman* v. *Williamson*, 39 Atl. R. 731.

The testimony shows that at the time of coming into possession of the third note, Kohlhoss was satisfied in his own mind that Mobley had committed adultery with his wife on numerous occasions. The wrong had been done, and she was no longer fit to be his wife, hence it was to establish as a fact what he felt satisfied beyond a doubt in his own mind had taken place.

He did not send her to Washington, he simply permitted her to go at her request. How could he tell that Mobley would meet her there if she did go? How could he know his wife would write Mobley a note to meet her there, before she had written such a note. She wrote the note making the date with Mobley, Kohlhoss simply remained quiet and allowed them to carry out their purpose, they carried it out and were caught. Of this the defendant complains. Kohlhoss did what he had a right to do, and what the law says he had a right to do.

Bishop says, He may watch her, he may even leave open opportunities which he finds, but he must not make new ones or lay temptations in her way.    2 *Bishop*, sec. 214.

In *Robbins* v. *Robbins*, 140 Mass. 531, the Court said, There is a manifest distinction between the desire and intent of a husband that his wife, whom he believes to be chaste should commit adultery, and his desire and intent to obtain evidence against his wife, whom he believes already to have committed adultery, and to persist in her adulterous practices whenever she has opportunity to do so.   Continuing the Court said, a chaste husband ought to have a wife who will remain chaste when exposed to temptations which are incident to ordinary conditions of modern social life, and if she commits adultery against his wishes, and without his procurement, he ought to be permitted to obtain evidence of that fact.

*Wilson* v. *Wilson*, 154 Mass. 194, closely resembles the case at bar, the Court said: Merely suffering in a single case a wife whom he already suspects of having been guilty of adultery, to avail herself to the full extent of an opportunity, to indulge her adulterous disposition, which she has arranged without his knowledge, does not constitute connivance on the part of the husband, even though he hopes to obtain proof which will entitle him to a divorce, and especially refrains from warning her for that reason, he may properly watch his wife, whom he suspects of adultery in order to obtain proof of that fact.

The case should have been left to the jury, because there was sufficient evidence to establish the fact that defendant had criminal connections with plaintiff's wife prior to the transaction, which defendant claims was connivance.

For the sake of this argument we may concede that plaintiff was guilty of connivance, in regard to the Cosmopolitan Hotel transaction, yet his actions in regard to that would not prevent him from recovering for prior acts of adultery. *Tiffany's P. & D. R.*, 196; *Woodward* v. *Woodward*, 41 N. J. Eq. 224; *Morrison* v. *Morrison*, 142 Mass. 361; 2 *Bishop M. D. S.*, sec. 217.

The testimony was sufficient from which the jury could

find that they had committed adultery before. The third note tells Mobley that she would meet him at the same time and place as the other time. Where did they meet? at the Cosmopolitan Hotel, hence it is too plain to be mistaken, they had met there before, they had met at graveyards, and other places in the night time, Kohlhoss himself had secured two very suspicious notes before this. Other witnesses had seen notes pass between them, and they acted like lovers, in the absence of Kohlhoss. She had entertained him in her parlor for as much as a half day at the time, drinking cider, in the absence of Kohlhoss. Mobley had used compromising language towards her without reprimand or objection on her part. His visits were frequent in Kohlhoss' absence, and his conduct more familiar.

Now, in proving adultery, it is not necessary that any one act should be proved as having occurred at any certain time and place, but the opportunity for the commission of the act, the conduct of the parties and all the circumstances must be considered, and then determine from the whole testimony whether it should convince unprejudiced and cautious persons of the guilt of the defendant. *Shufeldt* v. *Shufeldt*, 86 Md. 519. This was a suit for divorce but proof is the same in crim. con. 2 *Greenleaf's Ev.*, sec. 40–45; *Dunham* v. *Dunham*, 162 Ill. 624. Hence it was for the jury to say whether or not defendant had been guilty of adultery with plaintiff's wife prior to September 25.

The confession of the wife was admissible. The Cosmopolitan Hotel transaction dated from the writing of the note until the end of the pursuit in Washington, and confession was admissible as part of the *Res Gestae*. *Insurance Co.* v. *Mosley*, 8 Wall. 397.

Paramour's confession may be used in evidence against the defendant, if connected with some act of confession of the defendant, in the nature of a joint acknowledgment. 2 *Greenleaf's Ev.*, sec. 46; *Matchen* v. *Matchen*, 6 Pa. St. 332; *Walter* v. *Green*, 1 C. & P. 621.

*Edward C. Peter* and *Hammond Urner* (with whom were *Wm. Viers Bouic* and *Arthur Peter* on the brief), for the appellee.

While all of the authorties agree that connivance is an absolute bar to the action, it is difficult, perhaps, to obtain a legal definition of connivance that is in harmony with all the cases. Some judges have, at times, indicated that in their opinion connivance requires some activity on the part of the husband. Other Courts laying down a rule that is more consistent with public policy, domestic virtue, and the doctrine which one would expect a Court of high principles to enunciate, have found little or no difference between active consent and passive consent. The latter view is taken in *Barclay* v. *Barclay*, 98 Md. 371; *Morrison* v. *Morrison*, 3 Hagg. 105; *Dennis* v. *Dennis*, 68 Conn. 194.

Connivance is a bar to an action for criminal conversation. 9 *Amer. & Eng. Ency. of Law*, 2nd ed. 829; *Bunnell* v. *Greathead*, 49 Barbour, 106; *Winter* v. *Henn*, 4 Carr & Payne, 494; *Prettyman* v. *Williamson* (Del.), 39 Atl. Rep. 371; *Rea* v. *Tucker*, 51 Ill. 110; *Tome* v. *Massey*, 62 Ill. 47; 8 *Amer. & Eng. Ency. of Law*, 2nd ed. 263.

"If the law were to tolerate a husband in consciously, although passively, conniving at his wife's infidelity, and then aid him in reovering damages in any sum whatever from her alleged paramour, suits like the present, instead of being, as they now are, of very rare occurrence, would multiply with frightful velocity. Shameless husbands, possessed of beautiful but equally shameless wives, would then be constantly setting them as traps with which to snare wealthy paramours for the deliberate purpose of making money out of them, and a verdict for the defendant would not be a finding by you that he was innocent of having seduced his wife, or that he was innocent of having alienated her love and affections from him, for it would only be a verdict against the plaintiff upon the ground of that public policy, which will not, through an action like the present, permit a man to make money out of his own moral turpitude." *Silvernali* v. *Westerman*, 11 Luzerne Legal Register (Pa.), 5.

In the following cases, under circumstances much less convincing than now presented to this Court, connivance was found to exist. *Bunnell* v. *Greathead*, 49 Barbour, 106; *Dennis* v. *Dennis*, 68 Conn. 194; *Bourgeois* v. *Chauvin*, 39 La. Ann. 216; *Morrison* v. *Morrison*, 136 Mass. 310; *Timmings* v. *Timmings*, 3 Hagg. 76; *Lovering* v. *Lovering*, 3 Hagg. 85; *Michelson* v. *Miehelson*, 3 Hagg. 147; *Gilpen* v. *Gilpen*, 3 Hagg. 150; *Gipps* v. *Gipps*, 11 H. of L. Cases, 1; *Pierce* v. *Pierce*, 3 Pick. 299; *Cairns* v. *Cairns*, 109 Mass. 408; *Sherwood* v. *Titman*, 55 Pa. St. 81; *Myers* v. *Myers*, 41 Barb. 114; *Bailey* v. *Bailey*, 29 Atlantic R. 847; *Hedden* v. *Hedden*, 21 N. J. Eq. 70; *Harris* v. *Harris*, 2 Hagg. 160.

The plaintiff's first assignment of error is clearly ill founded. There is no rule of evidence which by any possibility would permit the introduction of what purports to be a written recital of past events made by a third party to the suit when that party wasn't acting on behalf of either of the parties to the suit, nor were they present when the same was executed. *Greenleaf on Evidence*, sec. 185 and note; *Taylor on Evidence*, sec. 767 *et seq.*, and note; *Sanborn* v. *Gale*, 162 Mass. 412.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant Kohlhoss sued the appellee Mobley in the Circuit Court for Montgomery County for criminal conversation with the former's wife. Mobley pleaded *non cul.* and after joinder of issue the case was moved on Kohlhoss affidavit to the Circuit Court for Frederick County where it was tried.

On the trial of the case the defendant, at the close of the testimony for the plaintiff, offered a prayer asking the Court to instruct the jury that there was no legally sufficient evidenc from which they could find for the plaintiff, and that therefore their verdict must be for the defendant. The Court granted the prayer and a verdict was rendered for the defendent, and a judgment entered thereon from which the plaintiff appealed.

There was evidence on behalf of the plaintiff legally suffic-

ient to support a verdict in his favor, if it had not also ap-
peared, in the opinion of the Circuit Court, from the uncon-
tradicted evidence that the plaintiff had debarred himself from
asserting a right of recovery by his own connivance at the
intercourse complained of between his wife and the defendant.
The counsel for the appellant did not in the argument contro-
vert the proposition that connivance on the part of a husband
when properly established bars an action for *crim. con.* as it
does a suit for a divorce, but they insisted that connivance is
always a question of fact to be determined exclusively by the
jury, and that the Court below erred in refusing to permit the
jury to pass upon the evidence as to its existence in the pres-
ent case.   The question whether the plaintiff in an action like
this connived at the misconduct of his wife is primarily one of
fact for the jury.   It may even be said that, as the essence of
connivance is consent which like malice or good faith consti-
tutes an unseen motive of human conduct, it is especially a
question for the jury.   But the connivance is not proven as
an independent fact.   It is usually established as a conclusion
from a line of conduct pursued by the husband in relation to
his wife's intercourse with and relations to the alleged para-
mour.   If therefore the conduct of the husband as established
by undisputed evidence or admitted in his own testimony is
such that a rational mind could draw no other conclusion
therefrom than that he had consented actively or passively to
the conduct on the part of his wife and the defendant of which
he complains, the question would become one of law for the
Court which in that event would not only be justified in tak-
ing the case from the jury, but it would become its duty to
do so.

The authorities are in substantial accord as to the character
and degree of connivance requisite to bar an action of *crim.
con.*   The conduct of the husband must be such, when sub-
jected to the test of reasonable human transactions, as to show
an intention to connive; and here as elsewhere the presump-
tion of the law is in favor of honesty and correctness of pur-
pose, but the husband like other persons is chargeable with an

intention to produce the necessary and legitimate consequencse of his own deliberate action. A passive connivance has been held to be as effectual as an active one to bar the action. Lord Stowell in *Morson v. Morson*, 3 Hagg. 87, said, "The first general and simple rule is if a man sees what a reasonable man could not see without alarm, if he sees what a reasonable man could not permit, he must be supposed to see and mean the consequences. * * * The presumption of the law is against connivance, and if the facts can be accounted for without supposition of an intention (to connive) the Courts will incline to that construction * * * However, though to bar the husband there must be intention on his part, I have no difficulty in saying that mere passive connivance is as much a bar as active conspiracy." In *Dennis v. Dennis*, 68 Conn. 194, it is said "Connivance may be the passive permitting of the adultery or other misconduct as well as the active procuring of the commission; if the mind consents there is connivance." Both of the foregoing cases were cited and relied on by us in *Barclay v. Barclay*, 98 Md. 371, where we said "Connivance is said to be the consent or indifference of the complainant to the misconduct complained of as a cause of divorce. The defense is in the nature of an estoppel, and is generally set up as a defense to adultery only although the principle may be applicable to other causes for divorce."

It has been held that a husband who has not directly or indirectly put opportunities of committing adultery in the way of his wife will not be guilty of connivance for merely allowing her to utilize an opportunity for committing adultery which she has arranged without his knowledge or participation. And he may do this for the purpose of obtaining evidence against her, but he must not make opportunities for her or smooth her path to the adulterous bed. *Wilson v. Wilson*, 154 Mass. 194; *Morrison v. Morrison*, 140 Mass. 528.

Let us now examine the facts of the present case in the light of the principles which we have stated.

The following facts appear from the uncontradicted evidence on behalf of plaintiff contained in the record. In January,

1895, he was married, his wife being then about 20 years of age. About 1899 suspecting her of infidelity with a man other than the defendant he followed her to Washington, and finding her at the same theatre with the man upbraided her and told her she could go home or where she pleased. She returned to her father's house and remained there for several months when her husband, having concluded that her relations to the man had not been criminal, received her back to his house and their marital relations were fully restored.

In February, 1900, Kohlhoss, with his wife took up his residence at the village of Derwood, in Montgomery County, and opened a small grocery store in the building in which he resided. He also conducted a huckstering business and was frequently absent from the store driving his huckster's wagon. His wife assisted him in conducting the store, generally occupying a position at the desk standing near the rear end of the storeroom. Mobley, the appellee, who resided at the distance of only one-eighth of a mile from the store, began to deal with it when it was first opened and soon became one of its best customers. His visits to the store increased in frequency to such an extent that for a year or more prior to September, 1903, he spent according to Kohlhoss' own testimony "three-fourths of his time" there. Kohlhoss when asked how Mobley occupied his time when at the store replied, "He generally sat near the desk, my wife was at the desk, he paid attention to my wife."

About the first of September, 1903, Kohlhoss observed certain conduct of his wife and Mobley which he says for the first time aroused the suspicion in his mind that illicit relations existed between them, and caused him to watch their movements more closely. On two separate evenings thereafter he saw his wife leave the store about nightfall and go in the direction of a neighboring graveyard and remain for about an hour. Mobley followed her each time after an interval of three or four minutes and did not return to the store. On another day when he heard his wife and Mobley whispering to each other in the store for four or five minutes he managed

to get near enough to them to overhear part of their conver-sation which he describes as follows: "He (Mobley) was after her why she did not come out that night. She gave him some excuse that she went out and fell into the hands of some girls and she could not meet him." Early one morning about the middle of September while Kohlhoss and his wife were still in bed they heard a rattling at the store door below them. He got up to see who it was and saw that it was Mobley and so informed his wife and then started to dress in order to go down and open the door, but his wife urged him to return to bed and volunteered to go down for him saying that it was not Mobley at the store door. Kohlhoss returned to bed for a few minutes until his wife had had time to get down stairs and then got up and followed her down, where he found that she and Mobley were in the rear part of the store with the doors closed and from scuffling which he heard in there he suspected that they were having carnal intercourse with each other. He neither interrupted them nor made any outcry, but went up stairs and fruitlessly endeavored to induce his brother, who was a visitor at his house, to go down and enter the store with him as he said he was afraid of Mobley. That interview between Mrs. Kohlhoss and Mobley in the store was permitted to continue fifteen or twenty minutes without inter-ruption until Mobley voluntarily went away, having in the meantime made a purchase from the store.

Kohlhoss, neither during nor after these occurrences, made any protest or objection to his wife in reference to her conduct with Mobley or her supposed relations to him, but he went to Washington and employed Bradley's Detective Agency to send two men up to Derwood to find some evidence of his wife's infidelity. After remaining a day the men told him it was impossible to accomplish anything by detectives around Derwood, whereupon he sent them back to Washing-ton and told them not to go any further until they heard from him.

During the early part of September Kohlhoss had several times while in the store seen notes secretly passed to his wife

from Mobley and had seen her after reading them tear them up and throw them away. Kohlhoss afterwards collected the fragments of the notes and put them together and found their contents to be ambiguous but not necessarily incriminating. On the 23rd of September, however, Kohlhoss recovered the fragments of a note which he had seen Mobley secretly pass to Mrs. Kohlhoss in the store, which, when put together, read as follows: "*I am thinking of going to the city on the milk train in the morning. Will it suit you to go, if so go on the electric cars and I will see you at the same time. and place as the other time, of course if it will not suit say yes, so I will know what to do.*" On the same day after Kohlhoss had gotten possession of this note, his wife proposed to him that, as he was not feeling very well, she would go to Washington in his stead on the next day to make purchases for the store. He, instead of forbidding her to go, or warning her of the danger of the course she was pursuing, consented that she should go. Having thus not only consented to but assisted in perfecting the assignation between his wife and Mobley, he at once notified Bradley, the Washington detective, of the finding of the note and of his wife's intended visit to Washington on the next day and asked him to put his men on the lookout for her. On the next morning Kohlhoss took his wife to the train as she started for Washington to keep her assignation, purchased a ticket for her and kissed her good-bye, and then he went promptly by another road to Washington to await developments. Without pursuing the details of the evidence on this subject it is sufficient to say that Mobley went to Washington on the same train as Mrs. Kohlhoss and they were followed by the detectives to a house known as the Cosmopolitan Hotel where they remained together for sometime in a private room.

The plaintiff further offered in evidence a paper purporting to contain a written confession by his wife of having committed adultery .with Mobley during their interview at the hotel and on previous occasions, not specified, at Derwood, and he offered to also prove by competent testimony that she had signed the alleged confession at the office of her husband's

attorney two or three hours after the interview with Mobley at the hotel, but the Court sustained the objection of the defendant to the admission of the alleged confession and the offered testimony.

The facts which we have mentioned, all proven by uncontradicted evidence on behalf of the plaintiff and almost all of them by his own testimony, cannot fail to prove to any reasonable mind such a course on the part of the plaintiff, both before and after the time at which he states that his suspicions as to his wife's chastity were aroused, of indifference to and acquiescence, in the habitual conduct and attitude of his wife and Mobley toward each other, as not only deprived her of his marital protection but afforded to their incipient amour full opportunity to develop and mature into her complete dishonor. This line of conduct on the part of the plaintiff—who was not a stranger to his wife's weakness for other men—in reference to her liaison with Mobley, which was largely conducted under his own eyes, amounted in our opinion to such connivance as to effectually debar his right of recovery in this case. We, therefore, hold that the Circuit Court committed no error in withdrawing the case from the jury.

The view which we have taken of the effect of the plaintiff's own conduct upon his right to recover in this case makes it unnecessary for us to notice the ruling of the Circuit Court upon the admissibility in evidence of the alleged confession of the wife further than to say that we find no error in that ruling. The alleged confession purports to be a recital of past events made by one not a party to the case out of the presence of both plaintiff and defendant and having no authority to bind either of them.

The judgment appealed from will be affirmed.

*Judgment affirmed with costs.*

(Decided November 23rd, 1905.)