John J. COMTE, Plaintiff-Appellant,

v.

Lonnie BLESSING, Defendant-Appellant.

No. 50319.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1964.

Buerkle & Lowes, Jackson, Albert C. Lowes, Jackson, for appellant.

Leo J. Rozier, Perryville, for respondent, John J. Comte.

STOCKARD, Commissioner.

Plaintiff, John J. Comte, brought suit in two counts for criminal conversation and alienation of affections against Lonnie Blessing. Pursuant to jury verdict, judgment was entered on Count I (criminal conversation) for defendant, and judgment was entered for plaintiff on Count II (alienation of affections) in the amount of $5,000. Plaintiff has appealed from the judgment as to Count I wherein he sought $50,000 actual and punitive damages, and defendant has appealed from the judgment as to Count II. We shall first review defendant's contentions of error relating to the judgment on Count II.

Defendant first contends that Count II of the petition fails to state a claim upon which relief can be granted in that (1) "it must be alleged * * * that the defendant actually enticed away the spouse of the plaintiff;" that (2) "the plaintiff himself did not cause the alienation;" and (3) that "plaintiff's spouse did not, in fact, voluntarily bestow her affections upon a stranger".

The elements of a cause of action for alienation of affections are defendant's wrongful conduct, plaintiff's loss of the affection or consortium of his spouse, and the causal connection between such conduct and the loss. 27 Am.Jur. Husband and Wife § 523; 42 C.J.S. Husband and Wife, § 669; Rank v. Kuhn, 236 Iowa 854, 20 N.W.2d 72,

74; Koehler v. Koehler, 248 Iowa 144, 79 N.W.2d 791, 796; Paulson v. Scott, 260 Wis. 141, 50 N.W.2d 376, 31 A.L.R.2d 706; McQuarters v. Ducote, Tex.Civ.App., 234 S.W.2d 433. Plaintiff alleged that defendant "harbored [plaintiff's wife] into his home, constantly kept company with her in various places, persuaded her to live apart from plaintiff, * * * and by arts and wiles of his caused plaintiff's said wife to become dissatisfied with her marriage to plaintiff * * *." Defendant's motion to require Count II to be made definite and certain, which was overruled, asked only that plaintiff be required to allege "where the alleged marriage took place * * * and at what time or places the alleged acts referred to in paragraphs 2 and 3 of Count II * * * transpired." The petition is not a model, and some of the allegations border on allegations of conclusions and not of facts, but in the absence of any more specific objection to Count II it sufficiently alleged as the wrongful act of defendant that he enticed away the spouse of the plaintiff. Items (2) and (3) above, if established by proof, constitute defenses to the cause of action for alienation of affections, 42 C.J.S. Husband and Wife, §§ 669 and 670, and to state a cause of action it is not essential that plaintiff anticipate and negative such defenses in his petition. The essential issues on this appeal are whether there was sufficient evidence to submit to the jury the issue of the alienation of affections by defendant of plaintiff's wife, and if so, whether that issue was properly submitted by the instructions.

Plaintiff and his wife, Helen Marie, were married on February 9, 1952, she then being about 18 years of age and four months pregnant. During the marriage, which was dissolved by divorce on September 14, 1961, she gave birth to six children. Plaintiff and his wife lived at several places in Perry County, but in 1959 they moved to a house about one mile from where the defendant, a bachelor who was then 54 years of age, lived alone on his farm located four miles west of Perryville. Plaintiff was a carpenter by trade, and commencing in 1960 he worked in St. Louis, but would return to his home on Wednesday nights and on weekends. Social "visits" between plaintiff and his wife and the defendant commenced in the latter part of 1959 or early 1960, and the three of them went to or were at dances together, apparently on numerous occasions. The first meeting between defendant and Helen Marie without plaintiff being present occurred after she wrote defendant a note, delivered by her "little boys," in which she asked him to stop by her house. In August 1960, plaintiff noticed that his wife was "cold" toward him, and after a conversation with her about it he went to see defendant to find out if it was true, as plaintiff said, that defendant was "seeing my wife while I was in St. Louis." Defendant admitted to plaintiff that he had had sexual intercourse with Helen Marie, and at the trial defendant admitted four acts of sexual intercourse with her, two and possibly three acts occurring after this conversation between plaintiff and defendant. It is not entirely clear from the evidence when this conversation took place, but apparently it occurred on September 21, 1960, the day that defendant entered a hospital where he remained for three weeks. While defendant was in the hospital, at his wife's request plaintiff took her "a few times" to visit defendant after she told her husband that she "loved him [defendant] and was going to see him." After defendant returned to his home, and after plaintiff knew that Helen Marie professed to be in love with defendant and that they had engaged in an act of adultery, on several occasions plaintiff took his wife by automobile to defendant's home, apparently at night, and left her there alone with him. Sometimes he would return to get her and other times she would walk home. At one time when Helen Marie walked to defendant's house, plaintiff went there ahead of her and apparently hid under the bed, but when his wife arrived defendant talked to her on the porch, and the inference is that he would not let her in the house. Plaintiff admitted that defendant told him on more than one occasion that

his wife was "chasing him," and that at one time defendant asked plaintiff to keep his wife away from him. Plaintiff stated that he went to defendant's home a "number of times" and discussed with him the fact that Helen Marie was coming over and that "he [defendant] should make her go back home," and he added that it was "impossible" for him (plaintiff) to keep her at home. He attempted to talk to Helen Marie about stopping her affair with defendant but did not get her "complete cooperation." In his deposition, read to the jury by plaintiff as a declaration against interest, defendant stated that he never intended to marry Helen Marie and always told her so, but she "bothered me" and he left her alone but she would not let him alone. Plaintiff knew that his wife was writing "love letters" to defendant, and when he asked defendant for those letters he readily gave them to plaintiff. On September 21, 1960 when defendant entered the hospital, he told Helen Marie in plaintiff's presence that she should "go back" to plaintiff and that he could not marry her. However, it was subsequent to this that acts of sexual intercourse occurred between defendant and Helen Marie, and in addition, on several occasions defendant went to plaintiff's house in his absence and he and Helen Marie sat in front of the house in defendant's truck. At such times he affectionately embraced her and she kissed him.

In December 1960, plaintiff left his home and lived with his mother until February 9, 1961 when he returned. He found that his wife was "cold" and "ready to leave." In a letter directed to defendant and dated February 9, 1961 plaintiff stated that he would not "give" his wife a divorce "but if she leaves me for more than 48 hours she cannot ever come back." He also stated that he would not kill her or defendant, but that he had told her what he was going to do and that defendant should "ask her [and] she will be glad to tell you." His intentions in this respect are not revealed in the evidence. Plaintiff's wife did leave the house the next morning because, according

to plaintiff, "she wasn't gonna live in the same roof where I lived." After staying away about ten hours she returned to the house, ate supper with her husband and children and then "went back to [defendant's] house and stayed some more." The following day plaintiff intentionally took an overdose of "nerve tablets," and was hospitalized about four weeks. Helen Marie was then home because plaintiff fired a gun into the floor of the house "to make her stay back from me" when she "wanted to help me and I didn't want no help." When he returned home from the hospital his wife then left and went to work. Plaintiff subsequently filed suit for and obtained a divorce, including custody of the children, two of whom at time of trial were in a private home and the other four were in a church home for children.

Helen Marie testified as a witness for defendant. She stated that she fell in love with defendant the first time she saw him but that she did not love him any more. She also stated that she never loved her husband, even at the time she married him. She admitted her promiscuity with defendant with an air of braggadocio, and she stated in effect that she was the aggressor in the affair. She admitted that her father had talked to her about her affair with defendant, but that she told him "to mind his own business," and that she would "live [her] life as [she] pleased." She stated that she made similar statements to her brother, and concluded with the comment that "Nobody tells me what to do. I do as I please."

Defendant contends that the trial court erred in failing to direct a verdict in his favor as to Count II for alienation of affections because (1) Helen Marie was the active, moving force, that is, the seducer, and (2) plaintiff permitted, contrived at, and consented to the acts of adultery.

The evidence authorizes a finding that Helen Marie was the aggressor or the seducer in her affair with defendant, and it has been held that where the alienation or separation of the spouses is caused by the

voluntary act of the allegedly alienated spouse rather than by the wrongful conduct of the defendant there is no liability. See the cases cited in the annotation at 19 A.L.R.2d at pp. 486–493. But when the jury could find from the evidence that defendant was not entirely without fault, as in this case by reason of the acts of adultery and other conduct of defendant, the jury could also find that there occurred an unprivileged, intentional interference on the part of defendant with the legally protected marital rights of plaintiff, and it is a question for the jury whether such conduct was a contributing and controlling cause of the loss of affections suffered by plaintiff. See generally, Sandler v. Schmidt, Mo., 263 S.W.2d 35; 42 C.J.S. Husband and Wife, § 670. As to the issue of liability on the part of defendant in such situation, it is not a question of which is the more to be blamed, 27 Am. Jur. Husband and Wife §§ 525 and 537, although such issue may be relevant to the issue of damages. 27 Am.Jur. Husband and Wife §§ 537 and 545. In view of the evidence in this case defendant was not entitled to a directed verdict as a matter of law on the basis that Helen Marie was the aggressor or the seducer.

■ It is true, as contended by defendant, that implied or express consent or connivance on the part of plaintiff to the otherwise wrongful acts of defendant constitute a defense to an action for alienation of affections. 27 Am. Jur. Husband and Wife § 539; 42 C.J.S. Husband and Wife, § 674. The conduct of plaintiff in taking his wife to visit defendant at night alone in his house after he knew of her profession of love for him and of sexual relations between them is difficult of justification and contrary to the normal reaction of an innocent and incensed husband, if in fact he was, who discovers unfaithful conduct, which includes adultery, on the part of his wife. Defendant relies on Fuller v. Robinson, 230 Mo. 22, 130 S.W. 343, where the issue of connivance and consent was submitted to the jury. Here, defendant contends that connivance and consent were established as

a matter of law, but we are compelled to disagree. It was a jury question under the facts of this case whether the conduct of plaintiff amounted to consent on his part to the loss of his wife's affections or to connivance on his part in bringing about those wrongful acts by defendant which plaintiff contends resulted in the loss of his wife's affections. Neither connivance nor consent was established as a matter of law, and therefore, defendant was not entitled to a directed verdict on this basis.

■ Defendant also asserts that he was entitled to a directed verdict because the "allegations of Count II of plaintiff's petition have not been proved." He then sets out various allegations therein of which he asserts there was no proof, and in some instances he is correct. However, it is not necessary that plaintiff prove those allegations of his petition which are unnecessary to establish a submissible case for the jury. We rule that the evidence of plaintiff established such a case, and that was all that was required.

■ Defendant next asserts that he was entitled to a directed verdict because "under all the evidence shown there was no affection existing between plaintiff and Helen Marie Comte, and therefore, there was nothing to destroy or deprive plaintiff of." Prior to the entrance of defendant upon the scene plaintiff and his wife were living together, and she had given birth to six children, apparently fathered by plaintiff. Under such circumstances some affection can be presumed. In addition, "it is no defense to such action [alienation of affections], as a general rule, that the spouse of the plaintiff had little or no affection for the plaintiff before the alleged wrongful acts of the defendant, * * *." 27 Am.Jur. Husband and Wife § 537. See also De Ford v. Johnson, 152 Mo.App. 209, 133 S.W. 393; and Reynolds v. Reynolds, Mo.App., 143 S.W.2d 347. Such matters, however, may be relevant to the issue of damages. 27 Am. Jur. Husband and Wife §§ 543 and 545.

Defendant assigns as error the giving of instructions 5, 7, 9 and 10 at the request of the plaintiff. We shall review as briefly as possible the substance of these instructions.

Instruction 5 first set forth two abstract statements of law that (1) a husband is entitled to the society, comfort and assistance of his wife, and (2) that the law gives a right of action to the husband against any person who entices or persuades her to separate, or remain apart from him. The instruction then submitted that if the jury found that plaintiff and Helen Marie were husband and wife and "that the defendant intentionally persuaded or induced plaintiff's wife to separate from plaintiff and sever the relation of husband and wife, or remain apart from him, * * * and that the plaintiff was thereby deprived of the society, comfort, affection, and assistance of his wife, * * * then your verdict will be in favor of plaintiff and against defendant. * * * and you shall assess his damages at such sum as will reasonably compensate him for the deprivation, loss of the society and comfort and assistance of his said wife * * *."

Instruction 7, set forth four abstract statements of law, namely, that (1) it is not necessary that plaintiff prove by the evidence that he had at any time the love and affection of his wife; (2) that under the law a stranger has no right to voluntarily and unasked interfere with and disturb the concord and unity of the domestic relation or to interfere and cut off any chance or possibility of a future affection springing up between two spouses; (3) that the plaintiff had the right to seek the comfort, companionship, affection and assistance of his wife without the interference of any outside person; and (4) although the home life of plaintiff and his wife was unpleasant this would not justify defendant in voluntarily intermeddling with plaintiff's domestic affairs. The instruction then submitted that if the jury found "that plaintiff's wife still would have lived and remained with him if it had not been for the wrongful acts, conduct, and influence of defendant, if any, and

that she was induced to separate and remain apart from plaintiff by the intentional wrongful acts, conduct, and influence of defendant, and that said acts, conduct, and influence were naturally calculated to cause such separation, then your verdict will be for plaintiff and against defendant on said Count II (alienation of affections) of said petition." We note that a measure of damages provision was included in instruction 5 but not in instruction 7, and that instruction 8 was a separate measure of damages instruction, apparently applicable to the issue of alienation of affections but not worded the same as the provision in instruction 5.

Instruction 9 sets forth the abstract statement of law that it is not necessary that plaintiff prove by the evidence that defendant directly requested plaintiff's wife to leave him or to remain apart from him. It then submitted that if the jury believed that "defendant was intentionally guilty of such conduct as was calculated to prejudice plaintiff's wife against him, and to alienate her from him, and to induce her to leave him, and to remain apart from him; and that such effect was intended by defendant to be produced, and was actually produced by his conduct, then the jury should find a verdict for the plaintiff on said Count II (alienation of affections) of said petition."

Instruction 10 sets forth the abstract statement of law that plaintiff is not required to prove that defendant enticed and persuaded his wife away by direct and positive evidence, but these facts may be proved by circumstantial evidence, and it is the duty of the jury to take into consideration all the facts and circumstances in evidence. It then submitted that if "from all the evidence the jury believe that defendant intentionally persuaded plaintiff's wife to separate and remain apart from him, then it will be the duty of the jury to find a verdict for plaintiff on said Count II (alienation of affection) of said petition."

These are all of the verdict directing instructions pertaining to the action for alienation of affections given at the request of the plaintiff. In none of them are any

facts hypothesized which if found to exist would constitute what plaintiff contends to be wrongful acts on the part of the defendant which was a controlling cause in bringing about the loss by plaintiff of his wife's affections. We cannot determine whether, in the action for alienation of affections, plaintiff relies on the acts of adultery or some other conduct of the defendant as the wrongful acts leading to the alienation of affections. However, we note that in the action for criminal conversation the jury found the issues for the defendant, and as to that action the only submitted defense was that of connivance and consent which was also submitted as a defense to the action for alienation of affections. In the action for criminal conversation the jury either believed that no act of adultery occurred, but which was admitted by both the defendant and Helen Marie, or they found connivance and consent on the part of plaintiff. If plaintiff relies on the acts of adultery as constituting the wrongful acts of defendant in this action for alienation of affections, those acts are the same acts which were submitted in the action for criminal conversation, and the jury has found that those acts did not occur, or that if they did they occurred by reason of connivance and consent of plaintiff.

As a further comment concerning the instructions generally, we are of the opinion that without qualification by reason of the facts and circumstances of this case all of the abstract statements of law in plaintiff's instructions are not necessarily correct. For example, without any qualification as to connivance and consent, under the facts of this case it is not correct to state abstractly that "The law gives a right of action to the husband against any person who entices or persuades [his wife] to separate, or remain apart from him."

Despite the failure of plaintiff to hypothesize in his instructions the facts essential to his right of recovery for alienation of affections, defendant makes no complaint on that basis. The objections to the instructions are somewhat tenuous, although we do not rule that they all are entirely without merit. In view of the irregular method of submission by plaintiff, and the waiver by defendant of the most obvious irregularity in plaintiff's instructions, we prefer not to rule this case on defendant's objections to them. We have set out plaintiff's instructions, and made certain comments, preparatory to our discussion of two of defendant's requested, but refused, instructions.

Defendant's requested instruction B set forth the abstract statement of law that a spouse may voluntarily give her affections to another, and that when this is the case and such other person does nothing wrongful to gain her affections, then no ground of liability attaches against such person for an alienation of affections. It then sets forth a second abstract statement of law that the estrangement or alienation must arise from the conduct of the defendant complained of, or such conduct must be the controlling cause leading to the estrangement, and there can be no liability for a voluntary alienation.

Defendant's requested instruction D was as follows: "The court instructs the jury that before you can find the issues for the plaintiff, John Comte, and against the defendant, Lonnie Blessing, as to his claim for alienation of affections, you must find from the evidence that the defendant, Lonnie Blessing, intentionally influenced the wife of the plaintiff to withdraw her affections from the plaintiff, John Comte. It is not enough for plaintiff to show merely that Lonnie Blessing was friendly with the wife of the plaintiff, nor is sufficient that you should find merely that defendant's conduct in his association with Helen Marie Comte amounted to impropriety, or was even of a scandalous nature, but before you can find for plaintiff as to his claim for alienation of affections, it must be shown by the evidence that Lonnie Blessing's conduct in his association with Helen Marie Comte was improper and wrongful, and further, that Lon-

nie Blessing intended by such conduct to cause Helen Marie Comte to withdraw her affections from her husband, or that such conduct upon the part of Lonnie Blessing did cause the wife of plaintiff to withdraw her affections from plaintiff. If plaintiff has failed to prove any one of these facts by the greater weight of the evidence, it will be your duty to find the issues for the defendant, Lonnie Blessing, and against John Comte, the plaintiff, as to his claim for alienation of affection."

Instructions B and D contain correct abstract statements of law under the facts and circumstances of this case. The giving of an instruction identical with D, except for necessary changes as to names, was held not to constitute error in Sandler v. Schmidt, supra, and it was there pointed out that "an almost identical" instruction was approved in Claxton v. Pool, 182 Mo.App. 13, 167 S.W. 623. Of course, the fact that it was not error to give the instruction does not necessarily mean that it is error to refuse it. These instructions are cautionary in nature and consist only of abstract statements with no hypothesization of facts to make them applicable to this particular case. With a proper submission on the part of the plaintiff it ordinarily would be a matter of discretion on the part of the trial court whether they should be given or refused. However, the facts of this case and plaintiff's method of submission of his case result in these instructions having particular significance. For example, the jury could find from the evidence in this case, although such conclusion is not compelled, that defendant was a quiet, mild, lonely man of middle age who lived alone, and upon whom an adventurous and promiscuous younger woman bestowed her attentions and affections, and that defendant succumbed to her wiles despite his objections to her conduct when not under her immediate influence.

It is interesting to note that in Farrow v. Roderique, Mo.App., 224 S.W.2d 630 the instructions given at the request of the plaintiff in that case were substantially the same as those given at the request of the plaintiff

in this case. In fact, some of the language is identical. On appeal it was held that plaintiff's instructions were erroneous in that they were ambiguous, but that when "read with the other instructions," particularly those of the defendant they did not result in "reversible error." Instructions 7 and 9 in that case are substantially the same as defendant's requested instructions B and D in this case.

Plaintiff elected to submit his case in the manner he did, that is, by abstract statements of law and without hypothesizing essential facts. Defendant apparently consented to that procedure because he does not assert error in this respect and the instructions given at his request and those requested by him but refused have the same deficiency. However, when the plaintiff does elect this procedurally improper method, he still must be correct in his submissions as to the law of the case, and if he is not, defendant may object thereto for that reason, and he may request similar instructions to clarify or correct plaintiff's instructions. It may be that plaintiff's instructions contain correct general abstract statements of law when not applied to the facts of any particular case, but in view of the facts and circumstances of this case and the defenses raised by defendant, instructions B and D were necessary and proper in order for the jury to have a complete and fair presentation of the issues, insofar as that was possible under plaintiff's method of submission.

Plaintiff's position on this appeal is that the jury was adequately instructed as to the issues by the instructions given at his request, and that a jury "would have to be pretty thoroughly stupid if it did not understand that plaintiff could not recover unless it found that the acts of the defendant were the cause of the separation of the plaintiff's wife from him." However, when plaintiff deviates from the accepted and approved procedure of submitting issues to the jury by instructions, the defendant is entitled to meet those issues on the same basis as that selected by plaintiff. In this

case the defendant attempted to do so by his requested instructions B and D, and to refuse those instructions under the particular circumstances of this case resulted in an unfair and incomplete, and therefore inaccurate, presentation of the issues.

There are numerous other contentions presented which we shall not discuss because it is expected that on a new trial, if one is had, plaintiff and defendant will follow the correct procedure in the presentation of issues to the jury.

We turn now to plaintiff's appeal from that part of the judgment based on Count I. of the petition, criminal conversation.

Plaintiff first contends that the trial court erred in giving instruction 3 at the request of the defendant which submitted that the verdict should be for the defendant if the jury found that plaintiff "permitted, contrived at and consented to Helen Marie Comte's commission of acts of criminal conversation or adultery with defendant, if any, and could have prevented said acts, if any, and resulting damage, if there was any, and that these acts and omissions upon the part of the plaintiff proximately contributed to the plaintiff's damage, if any he did sustain." Plaintiff does not contend that this instruction is not a correct declaration of the applicable law. The only contention is that "there was no evidence in the record tending to show that Plaintiff Comte knew about and acquiesced in the wrong."

It has long been recognized, in accord with sound public policy, that consent or connivance by one spouse to acts of adultery by the other is a defense to an action for criminal conversation by the allegedly injured spouse, Lewellen v. Haynie, Mo., 287 S.W. 634; 27 Am.Jur. Husband and Wife § 539; 42 C.J.S. Husband and Wife, § 698, whether such consent or connivance be active or passive in nature. 27 Am.Jur. Husband and Wife § 539. In this case plaintiff may not have known of the first act of adultery between

his wife and defendant, but after he learned of it and after he was told by his wife that she was in love with defendant, he took her to see defendant while he was in the hospital and also took her in his automobile to defendant's house at night, left her there alone with defendant, and returned to get her and take her back to her home. There can be no question but that this evidence authorizes a finding by the jury that plaintiff took positive and affirmative acts to create situations where any reasonably intelligent man would know that a continued adulterous relationship would probably result. The question is whether this conduct is such that a jury could find that plaintiff connived and consented to the adulterous acts as that defense applies in an action for criminal conversation.

In Kohlhoss v. Mobley, 102 Md. 199, 62 A. 236, 5 Ann.Cas. 863, after the plaintiff knew his wife had committed an act of adultery with the defendant, plaintiff consented to her going to a nearby town where plaintiff knew that defendant planned to meet his wife. Apparently another act of adultery there occurred. The court held that connivance and consent is usually established as a conclusion from a line of conduct pursued by the husband in relation to the wife's intercourse with and relations to the alleged paramour, and that when he knows of her past wrongful conduct "he must not make opportunities for her or smooth her path to the adulterous bed." In the Kohlhoss case connivance and consent was held to be established as a matter of law. We do not think it is so established in this case, but we are of the opinion that the jury could find connivance and consent. See 27 Am.Jur. Husband and Wife § 539. Instruction 3 is supported by evidence.

Plaintiff next contends that since defendant admitted under oath that he had sexual intercourse with plaintiff's wife, the trial court should have directed a verdict for plaintiff on Count I of his petition based

on criminal conversation. Regardless of the right of a trial court to direct a verdict for the plaintiff based on oral testimony, the defense of connivance and consent was interposed and was supported by the evidence. For this reason, if not others, plaintiff was not entitled to a directed verdict on Count I.

That part of the judgment pertaining to Count I is affirmed, and that part pertaining to Count II is reversed and the cause therein is remanded.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.