EDWARD J. KAYE *vs.* CHEEVER NEWHALL.

Norfolk. May 6, 1969. — June 26, 1969.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Husband and Wife*, Consortium, Criminal conversation. *Evidence*, Opinion: expert; Conversation between husband and wife. *Conspiracy*. *Constitutional Law*, Self-incrimination. *Practice, Civil*, Argument by counsel.

At the trial of an action by a husband for loss of consortium and criminal conversation, it was prejudicial error to allow the jury to consider testimony by the plaintiff to the effect that he had become impotent where there was no medical evidence to substantiate such claim of impotency or to show that it was caused by the defendant's conduct. [303]

Evidence in an action by a husband for loss of consortium and criminal conversation with his former wife, from whom he had been divorced, warranted a finding that he and she had "conspired together . . . to recover damages from the defendant" and entitled the defendant to an instruction to the jury respecting the legal effect of such a conspiracy. [303–304]

The prohibition in G. L. c. 233, § 20, against testimony by a spouse as to private conversations between the spouses is applicable even though both wish to introduce the testimony. [304]

There was no infringement of the constitutional privilege against self-
incrimination of the defendant in an action for criminal conversation
with the plaintiff's wife where the plaintiff's counsel called the de-
fendant as a witness and in cross-examination of him asked him many
questions which he refused to answer, claiming the privilege, and the
plaintiff's counsel in his closing argument commented on the defen-
dant's claiming it; nor was the defendant entitled to an instruction to
the jury that no inferences unfavorable to him could be drawn from
his claiming it.  [304–306]

TORT. Writ in the Superior Court dated May 27, 1965.

The action was tried before *Spring, J.*

*Donald N. Sweeney (Samuel Hoar, Jr.,* with him) for the
defendant.

*Bernard A. Dwork (Enid M. Starr* with him) for the
plaintiff.

*Jacob M. Atwood, Joel Z. Eigerman & Harold M. Brown,*
for Emile de Antonio, amicus curiae, submitted a brief.

*Harold Rosenwald & Richard H. Field,* for Arthur K.
Solomon, amicus curiae, submitted a brief.

SPIEGEL, J.  The declaration in this action of tort con-
tained three counts, one for loss of consortium and another
for criminal conversation.  The third count was waived at
the trial.  The jury returned verdicts for the plaintiff on
each of the remaining counts in the amount of $45,000.  The
case is here on the defendant's bill of exceptions.

We summarize the material evidence.  The plaintiff was
the husband of one Lynn Kaye (Mrs. Kaye).  Despite differ-
ing social interests, their marriage was "on the whole . . . a
happy one."  Mrs. Kaye had, however, "[f]or a number of
years . . . without the plaintiff's knowledge, met men, gone
out to dinner with them, and had drinks with them."  Prior
to 1959, she had a "number of jobs as a cocktail waitress."
In 1959 or 1960, she "took a job" as a waitress at a hotel in
Brookline and shortly thereafter became a cocktail waitress
there.  It was at this hotel that she first met the defendant
who occupied a "position of managerial responsibility" there.

In late 1960, Mrs. Kaye and the defendant were, "at his
suggestion," sexually intimate and continued to be sexually
intimate until early 1964.  They also had various business

relations. The defendant gave Mrs. Kaye a checkroom concession and they opened joint bank accounts. Mrs. Kaye was eventually discharged by the Brookline hotel "because she was too close to the defendant."

The defendant visited the plaintiff's home and they became friendly. The plaintiff loaned the defendant $25,000 in order that the defendant and Mrs. Kaye could be equal partners in a motel to be acquired in Brockton. The motel in Brockton was never purchased. Subsequently the defendant obtained an interest in a hotel in Plymouth, and Mrs. Kaye became his "assistant manager." She lived at the hotel in a room adjoining the defendant's bedroom. Mrs. Kaye was discharged six weeks later and returned to the plaintiff's home in Brookline. When during the summer of 1963, the defendant purchased an inn in Sandwich, Mrs. Kaye joined him there. The plaintiff visited the inn regularly and stayed overnight two or three times a week. Mrs. Kaye was sexually intimate with the plaintiff when he was at the inn and she was sexually intimate with the defendant when the plaintiff was not at the inn.

On November 3, 1963, and December 8, 1963, the plaintiff left the inn and "returned to it stealthily in order to spy." On the latter occasion he saw the defendant enter Mrs. Kaye's room and he "heard sounds of love making." When he arrived home he "made notes of everything he had witnessed during the night. . . . The following weekend he returned to the [i]nn and acted as though nothing had happened."

At Christmas, Mrs. Kaye spent a week with the plaintiff in Brookline. They went to the inn for a New Year's Eve party. During the party, the plaintiff and the defendant had a disagreement concerning the financial books of the inn. The plaintiff spent the night with Mrs. Kaye and left the inn the next day. When he returned the following weekend in order to take Mrs. Kaye home, she was not at the inn. She had moved to a motel and later went to Florida for five or six weeks.

On her return to Massachusetts, Mrs. Kaye obtained a room in a private home located next to the inn. She filed

a divorce libel and a decree nisi awarding her a divorce was entered on November 24, 1964. She then moved back to the inn. In the spring of 1965, she again went to Florida for five or six weeks. While there she learned that the defendant had married another woman. Mrs. Kaye returned to Massachusetts and, after two weeks in a motel, "returned to live in the plaintiff's house . . . where she still resides, paying the plaintiff $10 a week rent."

1. The defendant excepted to the testimony of the plaintiff that prior to December, 1963, or early January, 1964, he had no potency problem, but that since then he "has been unable to have and has not had an erection" and "has left absolutely no interest in women." The defendant also excepted to the refusal of the judge to instruct the jury "to disregard all evidence of the alleged impotency of the plaintiff." The judge instructed the jury to consider, in assessing damages, how the interruption of his marital relationship had affected the plaintiff physically.

The plaintiff's testimony was the only evidence of impotency. He was hospitalized for a week in February, 1964, and during that time he was treated by a neurosurgeon and a psychiatrist. Later he visited a psychiatrist three times as an outpatient. However, he produced no medical evidence to substantiate his claim of impotency or to show that the alleged impotency was caused by the defendant's conduct. "The issue involved matters of a highly technical nature" and to submit it to the jury solely on the testimony of the plaintiff "invited them to indulge in sheer speculation." *Ramsland* v. *Shaw*, 341 Mass. 56, 61. Medical evidence of the plaintiff's impotency was required. We are of opinion that it was prejudicial error to admit the plaintiff's testimony on impotency and to refuse to instruct the jury to disregard it.

2. The defendant excepted to the refusal of the judge to instruct the jury as he had requested that "[i]f you find that the plaintiff and . . . [Mrs. Kaye] have conspired together in order to recover damages from the defendant in this action, then you must find for the defendant."

There was ample evidence on which the jury could have found that the plaintiff was aware of the relationship between Mrs. Kaye and the defendant prior to December 8, 1963, when he observed the defendant entering Mrs. Kaye's room and "heard sounds of love making." There was also ample evidence on which the jury could have found that the plaintiff not only did nothing to discourage this relationship, but actually encouraged it. He loaned the defendant a substantial sum of money and permitted Mrs. Kaye to leave home and live in the hotel and inn at which she worked with the defendant. Following the termination of her relationship with the defendant, Mrs. Kaye returned to the plaintiff's home and was residing there at the time of the trial. We think the jury would have been warranted in concluding that the plaintiff and Mrs. Kaye had "conspired together . . . to recover damages" and, therefore, the defendant was entitled to have the jury instructed with regard to the legal effect of such a conspiracy. *Kohlhoss* v. *Mobley,* 102 Md. 199. *Milewski* v. *Kurtz,* 48 Vroom, 132. *Comte* v. *Blessing,* 381 S. W. 2d 780 (Mo.).

3. It was also error for the judge to permit both the plaintiff and Mrs. Kaye to testify as to the content and substance of private conversations they had while they were husband and wife. The rule established by G. L. c. 233, § 20, as amended through St. 1963, c. 765, § 3, is a rule of disqualification, not of privilege, and the testimony was inadmissible even if both spouses wish the evidence to be received. *Commonwealth* v. *Cronin,* 185 Mass. 96. *Sherry* v. *Moore,* 265 Mass. 189. Leach and Liacos, Handbook of Massachusetts Evidence, 139–141.

4. Although it is not necessary to discuss the defendant's remaining contention in disposing of the bill of exceptions, we believe it to be worthy of some comment (see *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731; *City Manager of Medford* v. *State Labor Relations Commn.* 353 Mass. 519, 524), particularly in view of the briefs filed by amici because of a somewhat analogous case presently pending in the United States District Court. The defendant's contention is that

his privilege against self-incrimination under Article 12 of the Declaration of Rights of the Commonwealth and the Fifth and Fourteenth Amendments to the Constitution of the United States was violated when the plaintiff's counsel, although given prior notification that the defendant would claim the privilege, called the defendant as a witness. He was asked twenty-six questions, all but two of which caused him to claim the privilege. Counsel for the plaintiff in his closing argument to the jury commented upon the fact that the defendant claimed the privilege. The defendant argues that this resulted in his being subjected to "the imposition of . . . [a] sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack* v. *Klein*, 385 U. S. 511, 515. *Garrity* v. *New Jersey*, 385 U. S. 493.

We do not agree. The plaintiff had the right to call the defendant as a witness and to cross-examine him (see G. L. c. 233, §§ 20 and 22, as amended), even though the plaintiff knew that the defendant would claim his privilege. *Commonwealth* v. *Baker*, 348 Mass. 60, 62. We think that counsel had the right to comment upon this during closing argument. See *Phillips* v. *Chase*, 201 Mass. 444, 450; *Mitchell* v. *Silverstein*, 323 Mass. 239, 240. We do not think that this practice infringes upon the defendant's constitutional rights. The claim of privilege need not become the dominating issue if the defendant's counsel makes timely and proper objections because the judge has the discretion to limit the cross-examination. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 523, 525.

Properly followed this procedure places no sanction upon the defendant for claiming his privilege. It does not place him "'between the rock and the whirlpool.'" *Garrity* v. *New Jersey, supra,* at p. 496. The instant situation is to be distinguished from cases where the plaintiff seeks to have the defendant either testify or have judgment entered against him. See *de Antonio* v. *Solomon*, 42 F. R. D. 320 (D. Mass.); *McKelvey* v. *Freeport Housing Authy.* 29 Misc. 2d (N. Y.) 140. General Laws c. 233, §§ 20 and 22, "were enacted for the purpose of liberalizing what were at the time of their

enactment, and certainly are now, regarded as unwise restrictions upon the discovery of truth in the trial of causes. They should be given no constricted construction but should be interpreted to effectuate their dominating purpose." *Horneman* v. *Brown*, 286 Mass. 65, 70. Neither Article 12 of the Declaration of Rights nor the Fifth and Fourteenth Amendments requires us to invalidate these statutes in a civil case which might conceivably involve a criminal offence. It follows that the defendant was not entitled to an instruction to the jury that "'no unfavorable inferences to the defendant [could be drawn] from the fact that the defendant invoked the privilege afforded to him by the 5th Amendment to the Constitution of the United States.'"

*Exceptions sustained.*