van Gestel, J.
On March 9, 2001, this Court appointed a computer forensics expert, Kenneth R. Shear of Electronic Evidence Discovery, Inc., 4740 44th Avenue SW, Seattle, Washington, to determine whether a certain August 3, 2000 e-mail (“the August 3, 2000 e-mail”) purportedly sent by Hemant Trivedi to the plaintiff Suni Munshani (“Munshani”) was authentic. Mr. Shear, after an exhaustive study, has concluded that “the questioned message is clearly not authentic.” See Mr. Shear’s report dated September *733 12, 2001 (the “Expert Report”). This Court accepts the Expert Report in its entirety and has directed that it be docketed with the pleadings in this case.
Pursuant to paragraph 9 of this Court’s order of March 9, 2001, as amended, the parties were given twenty-one (21) days from the date of receipt of the Expert Report to file any objections or responses thereto. The parties agree that the Expert report was received by them on September 14, 2001, and therefore the 21-day period expired on October 5, 2001. On September 19, 2001, the Court received the defendants’ response to the Expert Report. On September 20, 2001, the Court received non-party, Hem-ant Trivedi’s, response to the Expert Report. On October 5, 2001, the Court received “Plaintiffs Response to the Report of the Independent Expert and Defendants’ Request for Sanctions.”
The plaintiffs response recites that “(o]n advice of counsel, Munshani has decided to invoke his privilege pursuant to the Fifth Amendment of the United States Constitution and Article Twelve of the Massachusetts Declaration of Rights and therefore declines to testily about or respond to the report of Kenneth Shear of Electronic Discovery, Inc.” This is a civil action. Consequently, the invocation of the privilege can result in sanctions against the litigant who asserts it. See Department of Revenue v. B.P., 412 Mass. 1015, 1016 (1992); Wansong v. Wansong, 395 Mass. 154, 157-58 (1985). Further, the Court can draw an adverse inference against the party who invokes the privilege. See Frizado v. Frizado, 420 Mass. 592, 596 (1995); Kaye v. Newhall, 356 Mass. 300, 305-06 (1969).
Under the circumstances presented by Munshani’s response, this Court sees no need for any further arguments on the Expert Report and the filings in response thereto.
The question now before the Court is what action it should take in light of the Expert Report. Clearly there was a fraud on the Court.
BACKGROUND
The plaintiff, Munshani, filed a complaint in this matter alleging that he is entitled to in excess of $25 million as the fair value of services rendered by him to the defendants in connection with raising several million dollars as capital for a venture capital fund. Munshani also filed a suit in the United States District Court in Boston (Munshani v. Terago Communications, Inc., CV 12614 RGS) (“the Federal suit”) against a potential recipient of venture capital funding from the venture. Hemant Trivedi, the purported sender of the August 3, 2000 e-mail, is the Chief Executive Officer of Terago Communications, Inc.
In the Federal suit, in response to a motion to dismiss on statute of frauds grounds, Munshani filed, as part of his opposition, as an exhibit a copy of the August 3, 2000 e-mail. This e-mail recited matters that would resolve in Munshani’s favor the statute of frauds issues raised by the Federal suit defendants. The document purported to be a writing signed by the CEO of Terago Communications, Inc., the entity to be charged by Munshani.
On February 16, 2001, the defendants here, after an investigation of their own, filed an ex parte motion asserting that the August 3,2000 e-mail was fraudulent, and seeking an order for the preservation of all electronic evidence and expedited discovery of computerized information. A similar motion was filed in the Federal suit.
On February 19, 2001, Munshani executed an affidavit in which he swore that he had received the disputed e-mail and that he had not tampered with or altered it in any way. This affidavit was submitted to the Federal Court on February 20, 2001, and to this Court on February 21, 2001.
On February 21, 2001, Munshani filed an opposition to the defendants’ request for expedited discovery of computerized information. In his opposition Munshani proposed instead that the Court appoint its own neutral expert to collect all relevant evidence and ascertain the truth with respect to the disputed e-mail. In Munshani’s opposition, his counsel asserted that ”[t]he record suggests that either Munshani or Trivedi has submitted a false affidavit.”
On March 9, 2001, this Court did exactly what Munshani requested and it is the expert’s report, received on September 14, 2001, that is now in issue. The expert was charged as follows:
The expert shall provide this Court and the parties with a written report setting forth his opinion as to whether the authenticity of the August 3 e-mail can be ascertained with a reasonable degree of technical certainty, and, if so, the expert shall state his opinion on such authenticity and the detailed grounds for that opinion.
The Court’s expert concluded, in a 147-page detailed report, that the August 3, 2000 e-mail produced by Munshani “is clearly not authentic.” In short, the expert’s conclusion establishes that Munshani took the header from another e-mail sent to him by Mr. Trivedi, altered the substance of that e-mail to provide supporting evidence that would avoid a statute of frauds defense, and then provided the altered e-mail in response to documentary production and urged its authenticity in sworn affidavits in the Federal Court and in this Court.
This Court draws the inference from Munshani’s response that the affidavit concerning the e-mail in issue that he filed in this case was wholly false and a deliberate and intentional fraud on this Court. It set in motion a number of hearings and a detailed investigation by the Court’s appointed expert. Throughout the entire process Munshani remained silent and never once came forward to reveal his fraudulent conduct. This Court, counsel for the defendants, and indeed it would appear counsel for Munshani himself, were all thereby made dupes to his actions. We all *734 spent countless hours trying to sort out this fraud that Munshani set in motion, all while he apparently assumed that he was too clever to get caught.
DISCUSSION
This Court accepts in its entirety the September 12, 2001 report of Mr. Shear and adopts it as the Court’s findings in this matter.
A “fraud on the court” occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party’s claim or defense.
Rockdale Management, Co., Inc. v. Shawmut Bank, N.A., 418 Mass. 596, 598 (1994).
While Munshani’s actions with the fabricated email are more directly related to the heart of the Federal suit, they, and the affidavits and oppositions to electronic discovery proffered by Munshani in this case, constitute a fraud on this Court as well. This Court possesses inherent power to impose sanctions for such actions. Those sanctions can include dismissal of Munshani’s complaint and an award of legal fees and costs to the other side. See, e.g., Aoude v. Mobil Oil Carp., 892 F.2d 1115, 1119 (1st Cir. 1989); Rockdale Management, supra, 418 Mass. at 598.
All courts are at the mercy of litigants and their advocates[1] in the often difficult search for truth. The ability to discover fraud in the process, particularly sophisticated computer fraud, is greatly limited. Thus, the imposition of strong sanctions is one of the very few ways of deterring such activity in the future. This Court intends such a message here.
Munshani engaged in a scheme that attempted to deceive two courts. He was persistent and intentional in his actions, first by fabricating evidence and submitting it to the Federal Court, and then by swearing to the authenticity of that evidence to both the Federal and the Superior Courts. The evidence is material to both cases. Had Munshani succeeded with his fraud, he could have dramatically changed the face of the case before this Court, to the serious detriment of the defendants and the Court as well.
Munshani has been shown to have acted knowingly in his submission and defense of the fabricated e-mail. The Expert Report makes it quite clear that “[it] is apparent that the questioned message was created in part by copying the comparator message after it was received by Mr. Munshani’s account.” Munshani intentionally fabricated the disputed e-mail and then attempted to hide that fabrication. Then, when discovered, Munshani, for over seven months while his e-mail fraud was under scrutiny, persisted in protesting his innocence and insisting that the document that he altered was authentic. This Court and the defendants have been grossly abused by Munshani’s fraud.
What Munshani did, and what cannot be accepted by this Court, amounts to “tamper[ing] with the fair administration of justice by deceiving ‘the institutions set up to protect and safeguard the public’ or otherwise abusing the integrity of the judicial process." Rockdale Management, supra, 418 Mass. at 598. Munshani’s behavior reflects a disturbing lack of respect for the judicial system, for this Court and for the fair administration of justice, all in the lust for money. He has, thereby, forfeited the privilege of using the system and manipulating it any further.
ORDER
The Business Litigation Session of the Suffolk Superior Court will not accept the fraud perpetrated upon it. The plaintiffs complaint is, for the reasons stated above, DISMISSED, and the plaintiff is ORDERED to reimburse the defendants for their contribution to Mr. Shear and his company of the costs and fees of the Court’s expert, and for the fees and expenses reasonably charged by counsel for the defendants to their own clients in all matters relating to the discovery of Munshani’s fraud, such that the entire cost thereof shall be borne by the perpetrator.

 At this point in this case the Court assumes no improper action on the behalf of Munshani’s former or present counsel. Rather, it assumes that former counsel is as stunned as the Court by the expert’s conclusions. See, e.g., “Making Black and White Out of Gray: An Attorney’s Duty to Investigate Suspected Client Fraud,” 29 New England Law Review 795 (1995).